## WILLIAMS v. THE STATE.

[No. 20,961. Filed February 5, 1907.]

1. TRIAL.—*Evidence.*—*Objections to Admission.*—An objection that offered evidence is "immaterial and irrelevant" raises no question. p. 89.

2. EVIDENCE. — *Dying Declarations.*—*Homicide.*—Dying declarations, to be admissible in evidence in a homicide case, must have been made while declarant was under a sense of impending death and without hope of recovery. p. 90.

3. SAME. — *Dying Declarations.* — *Admissibility.* — *Who Determines.*—The trial judge and not the jury determines the competency and admissibility of evidence of dying declarations. p. 90.

4. SAME.—*Dying Declarations.*—*How Determined.*—Whether a declaration is made when declarant was under a sense of impending death and without hope may be shown by declarant's declarations or by the circumstances of his injury and his condition. p. 90.

5. SAME.—*Dying Declarations.*—*What Are.*—Where declarant was shot in the abdomen three hours before the witness spoke with him, and was suffering intensely and he said to witness: "I am all in," "I am a goner" and "he [defendant] has made a sieve of my insides," and then closed his eyes, his declarations are admissible on the charge of homicide. p. 91.

6. APPEAL.—*Dying Declarations.*—*Admission of.*—The Supreme Court will not reverse the ruling of a trial judge in admitting dying declarations, unless error is manifest, the trial judge being in a better position to weigh evidence of their admissibility. p. 91.

7. HOMICIDE. — *Venue.*—*Evidence.*—*Sufficiency.*—Where an indictment was returned and trial had in Marion county, evidence that defendant committed the crime at the rear of number 2336 Indianapolis avenue, and that it occurred in "this county and State," sufficiently sustains the venue. p. 92.

8.  INDICTMENT AND INFORMATION.—*Return of.*—*Evidence.*—*Recording.*—Where the record, on appeal, shows that an indictment was returned into open court by a regularly organized and qualified grand jury, it is not subject to a motion to quash because not shown to have been filed in court, though the clerk did not endorse the fact of its return or filing, or record same. p. 92.

9.  SAME.—*Return.*— *Regularity.*—*Appeal and Error.*—Where defendant's substantial rights are not shown to have been violated, a reversal will not be ordered, where the record shows the regular empaneling of a grand jury, the return of an indictment into open court, the proper endorsements on such indictment and a trial and conviction thereon.  p. 93.

From Criminal Court of Marion County (35,771); *Fremont Alford,* Judge.

Prosecution by the State of Indiana against George Williams. From a judgment of conviction, defendant appeals. *Affirmed.*

*W. H. Beerman* and *Daniel Brown, Jr.,* for appellant.

*James Bingham,* Attorney-General, *William C. Geake, Henry M. Dowling* and *Edward M. White,* for the State.

HADLEY, J.—About 8 o'clock p. m. of Sunday, September 30, 1906, Edward J. Petticord, a police officer of the city of Indianapolis, was mortally wounded by a pistol shot. Appellant was indicted for the offense, tried, and found guilty of murder in the first degree, and sentenced to suffer death. He appeals.

One assignment is based on the overruling of his motion for a new trial, and the other upon the overruling of his motion in arrest of judgment.

It appears from the record that in the afternoon of Sunday, September 30, 1906, the defendant and Jesse Coe were, with others, congregated on the corner of Northwestern avenue and Twenty-fourth street, in the city of Indianapolis. Pat Roache, a police officer of the city, approaching the company, commanded them to disperse, whereupon the defendant and Coe, walking side by side, moved off in the direction of the officer, with their hands in

their pockets. They passed the officer without exchanging any words, but one witness testified that as they started towards the officer Coe remarked generally that "No damn policeman could drive him any place." A few minutes before 8 o'clock the same evening, the defendant and Coe went to the house of William Jackson, on Indianapolis avenue, but a short distance from the corner of Northwestern avenue and Twenty-fourth street, and upon leaving Jackson's house, a few minutes later, encountered, near the gate, Charles J. Russell and the deceased, both police officers of said city, and, upon being accosted by the officers, the defendant and his companion fired upon them, and, after the exchange of a number of shots, Russell and Petticord were found to be mortally wounded.

(1) With reference to the incident at the corner of Northwestern avenue and Twenty-fourth street, a few hours before the homicide, the State propounded to one of its witnesses the following question: "Just describe what you saw these men [Coe and defendant] do, or heard either of them say in the presence of the other." The defendant objected to the question "as being immaterial and irrelevant." The objection was overruled, and the witness was permitted to answer. It is a well-established rule in this State, that a party dissatisfied with the ruling of the court upon the admission of testimony must, for the information of the court, state specifically his objections to the admission of the testimony; and a statement that the same is "irrelevant and immaterial" is too indefinite and uncertain to be recognized as an objection. *Musser* v. *State* (1901), 157 Ind. 423, 430, and cases cited; *Hicks* v. *State* (1905), 165 Ind. 440.

(2) Referring further to the same circumstance, and to the moment when the defendant and Coe started towards the policemen, the State asked the following question: "Did you notice the positions of their hands at the time they started?" The defendant objected to the question for

the reason that it was immaterial where their hands were at the time. The court overruled the objection and allowed the witness to answer. This question is governed by the same rule as stated above. (3) Charles A. Bookwalter, mayor of Indianapolis, a witness for the State, testified that he called at the hospital to see Petticord within a few hours after he was wounded, and in describing what had occurred said: "I stepped up to Petticord's side and took his hand in mine and said: 'Ed, they have got you here, I see.' He said: 'Yes, Mayor, I am all in.' I said: 'Well, old man, you need not get nervous about your condition, we will get you out of here.' He shook his head and said: 'I am a goner.' He said: 'He has made a sieve of my insides,' and he closed his eyes then." On cross-examination the witness testified that his conversation with Petticord was two or three hours after his injury, and about ten minutes before a surgical operation was performed upon him; that the expression of Petticord's face indicated great suffering; that he did not say in terms that he believed that he was near death's door. After the cross-examination the defendant moved to strike out all of Mr. Bookwalter's testimony in regard to what was said to him by Officer Petticord, and what the witness said to Petticord.

The rule is well settled that, to make such declarations competent evidence, it must appear that the declarant, at the time of the utterance, was under a sense of impending death, without hope of recovery.

The state of mind, however, of the deceased, which is essential to the competency of the testimony, must be determined by the trial court, and not by the jury. And in proceeding to do this the judge is not confined to statements made by the declarant under the solemn conviction of approaching death, but it may be inferred from the general statements, conduct, manner, symptoms and condition of the declarant, which flow as the reasonable and natural results from the extent

and character of his wound, or the state of his illness. Gillett, Indirect and Collat. Ev., §202; *Gipe* v. *State* (1905), 165 Ind. 433, 1 L. R. A. (N. S.) 419, and cases cited; *Green* v. *State* (1900), 154 Ind. 655. See 21 Cyc. Law and Proc., 982, and large collection of cases; 2 Wigmore, Evidence, §1442.

Referring to the testimony, it appears that Mr. Bookwalter visited the deceased between two and three hours after he received his injuries. There had been plenty of time for the destructive forces of the wound to begin asserting themselves. The deceased told Mr. Bookwalter that he was "all in," that he was "a goner," that "he, [meaning the one who shot him] has made a sieve of my insides," and then closed his eyes against his friend and chief, who had come to gather the details of his injury, and whether, under all the circumstances, the facial expressions of suffering, spoken of by the mayor, were commingled with a sense of fear, anxiety and despair, are matters that may properly be considered by the judge in determining the competency of the declaration as evidence.

If the court is convinced, from the testimony of the witnesses, that the deceased, when he muttered the proffered declaration, was in expectancy of impending dissolution, he should permit the declaration to go to the jury, to be by them considered as other evidence under proper instructions of the court. An appellate tribunal is not in a situation to weigh the preliminary evidence as intelligently as the trial judge who had the witnesses before him, and will, therefore, not reverse the action of the lower court in admitting such evidence unless the error is manifest. Gillett, Indirect and Collat. Ev., §202; *Gipe* v. *State, supra.* We are unable to say that there is a manifest abuse of discretion in admitting the declaration.

(4) Appellant further claims that the venue of the homicide was not sufficiently proved. It is not essential that the

venue be established by questions and answers, specifically naming the particular county and state in which the offense was committed, but it is only necessary that such facts and circumstances be shown as will warrant the jury in finding the *locus delicti. Harlan v. State* (1893), 134 Ind. 339. The record discloses that the indictment was returned by the grand jury of Marion county, in which it was alleged that the crime was committed in Marion county, Indiana. The trial was had in the Criminal Court of Marion County, Indiana. One witness testified that the tragedy occurred on some open ground in the rear of his house, No. 2336 Indianapolis avenue. Another testified that he was a policeman in the city of Indianapolis, and that he was in the company of the deceased and Russell at the time of the shooting, and that it occurred in the rear of No. 2336 Indianapolis avenue, in an open spot, surrounded by buildings, locally called "The Court." Another police officer testified that he saw the deceased and Russell after the shooting, and that one of them was lying on the ground in "The Court," and that the other was sitting in a chair ten or twelve feet away; that they were both wounded; "that it occurred in this county and State, on the 30th day of September of this year, one week ago last Sunday." It thus appears that the offense was committed in this county and State—that is, in the county and State in which the trial was progressing—and, aided by the other evidence, was quite sufficient to sustain the venue. *Whitney v. State* (1871), 35 Ind. 503; *Cluck v. State* (1872), 40 Ind. 263; *Luck v. State* (1884), 96 Ind. 16.

(5) The defendant also insists that the court erred in overruling his motion in arrest of judgment. Section 283 of the public offense act of 1905 (Acts 1905, pp. 584, 646, §1924 Burns 1905) provides: "A motion in arrest of judgment * * * may be granted by the court for either of the following causes: First, that the grand jury which found the indictment had no legal au-

thority to inquire into the offense charged, for the reason that such offense was not within the jurisdiction of the court. Second, that the facts stated in the indictment or affidavit do not constitute a public offense." By virtue of this statute the defendant filed his motion in arrest of judgment, assigning therefor the following grounds: (1) That at the time of trial of this case the indictment herein bore no evidence of having been filed in this court; (2) that the indictment herein on which the trial was had, at the time of said trial, had never been recorded in the records of this court." With respect to this motion—waiving the question whether the grounds stated raise any question at all, properly presented by a motion in arrest of judgment, see Gillett, Crim. Law (2d ed.), §§959, 960, and cases cited—it has been held by this court that, when the record recites that the indictment, upon which the defendant was arraigned and tried, was returned into open court by a regularly organized and qualified grand jury, it is sufficient to show its due return. The ruling is based upon the principle that the failure of the clerk to indorse the fact of return, or filing, or to record the indictment does not, in any way, injure the defendant or furnish him any valid ground for reversal. *Ransbottom* v. *State* (1896), 144 Ind. 250, 252; *Padgett* v. *State* (1885), 103 Ind. 550; *Heath* v. *State* (1885), 101 Ind. 512; *Mathis* v. *State* (1884), 94 Ind. 562; *Courtney* v. *State* (1892), 5 Ind App. 356.

In this case the record recites the performance of all acts necessary to the impaneling and qualifying of a legal grand jury. It then proceeds: "Comes now the grand jury heretofore regularly impaneled and sworn, as by the statute provided, into open court, and said grand jury, now through their foreman, return into open court the following indictments, signed by Charles P. Benedict, prosecuting attorney, and indorsed by Thomas

D. Amos, foreman, as true bills; said bills are examined in open court by the judge thereof, and filed by William E. Davis, clerk of said court, and are as follows, to wit:

"35,771.

State of Indiana

          *v.*                          Murder."

George Williams.

Then follows the indictment in full, and then the indorsements showing the number and title of the cause, as above. Then follows this indorsement:

"Record book 33, page 421, Indictment for murder. A true bill. Thomas D. Amos, foreman."

This is followed by the names of the witnesses, and signed: "Charles P. Benedict, prosecuting attorney."

This record, reciting the presentment, return into open court, filing and recording of the indictment, aided by the presumptions that operate in favor of the regularity of the proceedings, must be held sufficient, especially when the defendant is unable to show, or at least does not attempt to show, that he was in any way prejudiced thereby in his substantial rights. We have considered all the questions presented, and find no error in the record.

Judgment affirmed.