**Willie T. WALLACE, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 45A03–0401–PC–40.

Court of Appeals of Indiana.

Nov. 8, 2005.

Transfer Denied Jan. 11, 2006.

Jeffrey Schlesinger, Appellate Public Defender, Crown Point, for Appellant.

Steve Carter, Attorney General of Indiana, Stephen Tesmer, Deputy Attorney General, Indianapolis, for Appellee.

## OPINION

DARDEN, Judge.

### STATEMENT OF THE CASE

In this combined appeal, Willie T. Wallace (hereinafter "Wallace"), after a trial by jury, challenges on direct appeal his conviction and sentence for voluntary manslaughter, as a class A felony. He also appeals the denial of his petition for post-conviction relief.

We affirm Wallace's conviction for voluntary manslaughter, and the denial of his petition for post-conviction relief.

### ISSUES ON DIRECT APPEAL

1. Whether the trial court erred by admitting hearsay statements by the victim.

2. Whether the trial court erred by admitting evidence of Wallace's character.

3. Whether Wallace's sentence violated *Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004) because the aggravating factors used to enhance his sentence were not found by a jury, beyond a reasonable doubt.

4. Whether Wallace received ineffective assistance of trial counsel.

### ISSUE ON POST CONVICTION RELIEF

Whether the trial court properly denied Wallace's petition for post-conviction relief based upon newly discovered evidence.

### FACTS [1]

On September 14, 1999, Gerald Wrice (hereinafter "Wrice") left his home at approximately 11:30 p.m. Wrice and Wallace encountered each other near the corner of Tapper and Drackert streets in Hammond. There had been a history of animosity between the two men. Wrice and Wallace got into an argument that escalated into a fist-fight. Moments after the fight began, several gunshots rang out in the vicinity of where they were fighting. Immediately after the gunshots, a male voice was heard to say, "[M]an, you didn't have to shoot me." (Tr. 270).

Ethelyn Hardy, a nearby resident, and others found Wrice lying in the grass near where he had been fighting with Wallace. Wrice told them "Will Squill" [2] shot him. (Tr. 277). At 11:40 p.m., Hammond Fire Department's emergency medical technicians (EMTs) were dispatched to the scene. The Hammond Police Department also arrived. The EMTs arrived at approximately 11:42 p.m. and administered emergency treatment to Wrice. They noted Wrice was conscious and that he had been shot several times and complained of pain. His vital signs were taken and his

---

1. On October 28, 2004, Wallace filed a motion to strike statement of facts by the State. This court being duly advised in the premises denies the motion.

2. As will be explained later, Wallace was also known as Will Scrilla.

condition was described as being weak and deteriorating. Michael Brooks, the EMT who rode in the rear of the ambulance with Wrice, asked Wrice if he knew who shot him. Wrice answered, "Skrilla." (Tr. 350).

The ambulance arrived at the hospital at 11:52 p.m. Wrice "was in extremis," a condition described as being the "state at which death is either eminent or extremely close." (Tr. 441).

In the emergency room, Nathalee Kresich (hereinafter "Kresich") was the primary nurse for Wrice. Wrice was able to answer her questions regarding his name and medical history. Near midnight, she asked Wrice if he knew who shot him. She heard him say the first name of "Will" and "a last name starting with an S." (Tr. 391). Karen Greinke, the charge nurse of the unit was also present and standing beside Kresich. She heard Wrice say "Will Scrilla" in answer to the question, who shot him. (Tr. 402). Anthony Adams, a Hammond Police Detective, was present with the nurses and heard Wrice answer that Will Scrilla shot him. Shortly thereafter, Wrice died.

After the fight with Wrice, Wallace returned to his home in South Holland, Illinois. On the morning of September 15, 1999, Wallace called Thomas Haynie (hereinafter "Haynie") and asked him to come to South Holland and drive him back to the scene of the fight. Wallace told Haynie what had occurred during the fight and shooting of Wrice. Haynie drove Wallace to the corner of Tapper and Drackert streets and dropped him off while Wallace searched for his keys and gun. Haynie picked up Wallace and they were later stopped by the Hammond Police. Wallace was charged with murder.

Wallace was tried by a jury from February 25 thru March 5, 2002. On March 5, 2002, the jury found him guilty of volun-tary manslaughter, and he was sentenced to thirty-five (35) years in prison on April 11, 2002.

On May 13, 2002, Wallace filed a notice of appeal. Subsequently, on October 22, 2002, this court granted Wallace's request to stay his direct appeal and to allow him to file a petition for post-conviction relief on the grounds of newly discovered evidence that was not available for trial. He filed his petition on November 25, 2002.

On July 11, 2003, an evidentiary hearing was held on the petition. Wallace present-ed testimony from Lakisha Brooks (here-inafter "Brooks"), who had been identified in the probable cause affidavit as an eye-witness to the crime, and Charles Grad-dick (hereinafter "Graddick"), Wallace's trial counsel. Brooks did not appear to testify at Wallace's trial. Graddick testi-fied to his diligent, yet failed, attempts to locate Brooks before and during Wallace's trial.

Brooks testified at the post-conviction relief hearing that she was looking at Wrice and Wallace fighting when she heard gunshots, but she did not see Wal-lace with a gun. This was at least the fourth version Brooks had given regarding the incident. Prior to her testimony on July 11, 2003, Brooks had given three statements to the police. On September 23, 1999, she gave two statements to the police. In the first, she stated that her grandmother told her someone was on the ground and had been shot; that Brooks approached the victim, discovered it was Wrice, and that Wrice repeatedly said "it was a car." (State's Exh. 2 PCR hearing). Before giving her second statement, she admitted that she lied in her first state-ment because she was afraid, but she now wanted to tell the truth. In her second statement, Brooks stated that she saw Wrice and Wallace fighting; she heard

gunshots; she saw Wallace run; and she heard a companion of Wallace's ask him "why he did it." (State's Exh. 3 PCR hearing). On February 9, 2000, she gave a third statement to police. In that statement, she identified Wallace through a photo array as the man fighting with Wrice and as the man she saw standing over Wrice when she saw several flashes from a handgun.

According to the probable cause affidavit,:

[Brooks] stated that on September 14, 1999 at approximately 11:00 p.m. she was at the corner of Drackert and Tapper in Hammond, Indiana together with several people including a person she knew as 'Will Scrilla.' She further stated that Gerald Wrice was walking down Tapper Street and he spoke with them and that 'Will Scrilla' punched him in the face and that Gerald and 'Will Scrilla' got into a fist fight and they were both fighting on the ground when she heard what sounded like a gunshot and she heard Gerald say, 'Will Scrilla is it like that.' She further stated that 'Scrilla' got up and she heard several more shots. She further stated that she saw 'Will Scrilla' standing over Gerald and saw 'several gun flashes going off.' She further stated that after that she saw 'Will Scrilla' run away.

(App.10).

On cross examination, Brooks denied giving more than one statement to the police, although she acknowledged her signature on all three of the statements presented in evidence. She further denied being hand-served with subpoenas to testify at trial. At that point, the State entered into evidence three subpoenas, desig-

nated as hand-delivered with a signature that appeared to be Brooks' signature. Additionally, Brooks denied having been convicted of the crime of conversion, but was later impeached with her criminal history evidencing that she had been convicted of conversion.

It appears that both the State and defense counsel tried to secure Brooks' testimony before and during the trial. Defense counsel testified that he had subpoenaed Brooks for depositions prior to trial. When Brooks did not appear for the depositions, defense counsel testified that he personally visited several addresses he had obtained for Brooks, but could not find her. The State had served her three times with a subpoena to testify at trial and she failed to appear. The trial court had even issued a body attachment for Brooks during the trial, but it was never served on her.

## DISCUSSION AND DECISION
### DIRECT APPEAL ISSUES

1. *Admission of Hearsay Evidence*

Wallace argues the trial court abused its discretion when it admitted hearsay testimony from the EMT, emergency room staff, and the police detective who testified that Wrice identified Wallace as the person that shot him. Wallace concedes that Wrice's first statement, made to Ethelyn Hardy at the scene was properly admitted as an excited utterance pursuant to Indiana Evidence Rule 803(2); but, he maintains Wrice's subsequent statements made in the ambulance and at the hospital, wherein Wallace was identified as the shooter, satisfy neither the excited utterance nor the dying declaration exception to the admissibility of hearsay.[3]

---

**3.** At trial, Wallace lodged no objection to the testimony of EMT Brooks wherein Brooks testified to Wrice's identification of Wallace as the shooter. Regarding the testimony of the nurses to the identification as to Wallace made by Wrice, the State argued that their

[1, 2] Hearsay is recognized as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Ind. Evidence Rule 801(c). Hearsay is admissible under the excited utterance exception to hearsay when the statement relates "to a startling event or condition while the declarant was under the stress of excitement caused by the event or condition." Evid. R. 803(2). "The amount of time that has passed between the event and the statement is not dispositive." *Taylor v. State,* 697 N.E.2d 51, 52 (Ind.1998). The issue is "whether the declarant was still under the stress of excitement caused by the startling event when the statement was made." *Id.*

■ Hearsay is also admissible under the dying declaration exception wherein the declarant makes a statement "while believing that the declarant's death was imminent, concerning the cause or circumstances of what the declarant believed to be impending death." Evid. R. 804(b)(2). "Under the dying declaration exception, the fact that a victim ultimately dies from her injuries does not make her statement admissible; rather, the victim must have known that death was imminent and abandoned all hope of recovery." *Beverly v. State,* 801 N.E.2d 1254, 1259 (Ind.Ct.App. 2004) (citing *Anderson v. State,* 471 N.E.2d 291, 292 (Ind.1984)). In order to determine if a declarant's statements were made with the belief "death was imminent" and the declarant had "abandoned all hope of recovery," the trial court may consider "the general statements, conduct, manner, symptoms, and condition of the declarant, which flow as the reasonable and natural results from the extent and character of

his wound, or state of his illness." *Id.* at 1260 (citing *Williams v. State,* 168 Ind. 87, 79 N.E. 1079, 1081 (1907)).

The testimony at trial established that Wrice was shot six times. Dr. Young Kim, a pathologist with the Lake County Coroner's Office performed the autopsy on Wrice and testified that one bullet entered the left side of the chest wall, "lacerate[d] a blood vessel in the right side of [the] lung and embedded in the right shoulder"; another bullet traveled through the abdominal wall and was embedded in the upper portion of the abdomen; there was a gunshot wound to the thigh, which was described as a "through-and-through gunshot wound"; a fourth bullet traveled upward through the muscle and hit the pelvic bone; and two bullets struck Wrice's left arm. (Tr. 456–457).

■ We find that Wrice's second identification statement made to the EMT very shortly after he had been shot multiple times, established a reasonable inference that Wrice was still under the effect of the event. Wrice's third identification statement to the nurses was made when he was "in extremis" and within thirty minutes of being shot. The trial court may also consider the surrounding details of the declarant's rapidly deteriorating condition when determining whether the statement is reliable as a dying declaration. *Beverly,* 801 N.E.2d at 1260. Thus, both of the later two statements were admissible as either excited utterances or dying declarations.

Subsequent to filing his reply brief, Wallace submitted additional authority, citing *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), for the proposition that admission of Wrice's hear-

testimony was admissible under either an excited utterance or dying declaration, both are exceptions to the hearsay rule. The trial court admitted the testimony of the nurse without clarifying under which exception it was being admitted. (Tr. 376).

say statements violated his Sixth Amendment right to confront the witnesses against him. Assuming, without deciding, that the issue was not waived because Wallace did not argue it at the trial court level, and although Wallace has failed to develop a cogent argument in his brief, *see* Indiana Appellate Rule 46(8)(a), we will consider whether the admissibility of a dying declaration violated Wallace's right to confrontation guaranteed by the Sixth Amendment, based on *Crawford.*

The Sixth Amendment's Confrontation Cause provides that, "[I]n all criminal prosecutions, the accused shall enjoy the right … to be confronted with the witnesses against him." U.S. Const. amend. VI. The Confrontation Clause has been deemed a bedrock of procedural guarantees and applies to both federal and state criminal prosecutions. *Id.* at 1359.

In *Crawford,* the United States Supreme Court considered whether an out-of-court statement, which was admitted pursuant to a hearsay exception or because it met some other guarantee of trustworthiness, violated a criminal defendant's Sixth Amendment right to confront witnesses against him when the declarant is unavailable. *Id.* The State of Washington had charged Crawford with the crimes of assault and attempted murder. At Crawford's trial, the State sought to introduce as evidence an out-of-court statement made by Crawford's wife during a police interrogation to rebut Crawford's claim of self defense. Crawford's wife did not testify at his trial because of Washington's marital privilege statute, which generally bars a spouse from testifying against the other without his or her consent. Crawford objected to the statement being admitted as evidence against him, arguing that its admission would violate his Sixth Amendment right to confront the witnesses against him. The State, relying

upon the Unites States Supreme Court's decision in *Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), argued that the use of the statement should not be barred against a criminal defendant because the statement bore "adequate 'indicia of reliability,' a test met when the evidence either falls within a 'firmly rooted hearsay exception' or bears 'particularized guarantees of trustworthiness.' ' *Crawford* at 1358 (citing *Roberts,* 448 U.S. 56, 66, 100 S.Ct. 2531, 65 L.Ed.2d 597). The State, in reliance upon Washington's own state statute, which does not extend the spousal privilege to bar a spouse's out-of-court statement from being admitted under a state's hearsay exception, argued that the statement should be admitted pursuant to that statute. The Washington Court of Appeals reversed Crawford's conviction; however, the Washington Supreme Court reversed the Court of Appeals and upheld his conviction. The United States Supreme Court granted certiorari to determine whether the out-of-court statement in Crawford's trial was properly admitted pursuant to a constitutionally accepted hearsay exception or because it met some other indicia of reliability and trustworthiness, which violated Crawford's right to confront the witnesses against him as guaranteed by the Sixth Amendment to the United States Constitution. Before deciding the issue, the Court engaged in a careful analysis of the language found in the constitutional provision as well as the historical background of the Confrontation Clause. Subsequent to its analysis and historical review, the Court determined there were two inferences that must be understood to properly understand the meaning of the Confrontation Clause.

The Court stated that the first inference at which the principal evil the Confrontation Clause was directed against was the

use of ex parte examinations (testimony) as evidence against the accused. *Id.* at 1364. Accordingly, the Court "reject[ed] the view that the Confrontation Clause applies of its own force only to in-court testimony, and that its application to out-of-court statements introduced at trial depends upon" the law of evidence. *Id.* at 1364. The Court explained that "[l]eaving the regulation of out-of-court statements to the law of evidence would render the Confrontational Clause powerless to prevent even the most flagrant inquisitional practices." *Id.* However, the Court did make it clear that not all hearsay implicates the Sixth Amendment's core concerns and some hearsay may be admissible under modern hearsay rules. *Id.*

The Court held that the Confrontation Clause primarily focuses on statements that are testimonial in nature. *Id.* Stated another way, the focus is on witnesses who testify against the accused or offer "a solemn declaration or affirmation made for the purpose of establishing or proving some fact." *Id.* Testimonial statements can also include those made to police officers during an investigation because police interrogations[4] both are "investigative and prosecutorial" in function. *Id.* at 1365.

The second inference the Court addressed was "that the Framers would not have allowed admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross examination." *Id.* at 1365. When the declarant of an out-of-court statement is unavailable, it is necessary that the defendant have had a prior opportunity to cross-examine the declarant if the statement is to be admitted. *Id.* at 1366–67. The Court recognized that in addressing issues surrounding the Confrontation Clause, their decisions have generally been faithful to the second inference but that the rationales supporting the outcomes have not been consistent. *Id.* at 1369. The Court firmly stated, "Where testimonial statements are involved, we do not think the Framers meant to leave the Sixth Amendment's protection to the vagaries of the rules of evidence, much less to amorphous notions of 'reliability.'" *Id.* at 1370. Dispensing with confrontation because testimony is "obviously reliable" was compared by the Court to "dispensing with a jury trial because a defendant is obviously guilty." *Id.* at 1371. The Court did find some acceptable exceptions to the Confrontation Clause that were not based on reliability. The Court noted, "For example, the rule of forfeiture by wrongdoing (which we accept) extinguishes confrontation claims on essentially equitable grounds; it does not purport to be an alternative means of determining reliability." *Id.* at 1370. Referring to the dying declaration exception, the Court stated:

> The one deviation [from confrontation] we have found involves dying declarations. The existence of that exception as a general rule of criminal hearsay law cannot be disputed. Although many dying declarations may not be testimonial, there is authority for admitting even those that clearly are. We need not decide in this case whether the Sixth Amendment incorporates an exception for testimonial dying declarations. If this exception must be accepted on historical grounds, it is sui generic.

*Id.* at 1367 n. 6.

*Crawford* drew a line between non-testimonial and testimonial hearsay. States

4. Interrogation here is used in a colloquial sense by the Court rather than in a technical legal manner. *Id.* at 1365.

are afforded flexibility in how they choose to develop their hearsay laws in relation to non-testimonial hearsay; however, in general, where testimonial evidence is at issue, the Sixth Amendment demands "unavailability and a prior opportunity for cross examination." *Id.* at 1374. *Crawford* stopped short of offering a comprehensive definition of "testimonial" hearsay. *Id.* At a minimum, the Court explained that the term means "prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." *Id.*

Several states, have addressed the issue of dying declaration after *Crawford* and have come to similar conclusions based on varied rationales. A month after *Crawford* was decided, the Kansas Supreme Court affirmed the trial court's ruling which admitted into evidence an out-of-court statement by the declarant who later died, applying a Kansas evidence rule based on reliability. *State v. Meeks*, 277 Kan. 609, 88 P.3d 789 (2004). *Meeks* affirmed the trial court's ruling without determining whether the victim's statements were "testimonial." Instead, it cited *Crawford's* acceptance of forfeiture by wrong doing and cited a portion of *Reynolds v. United States*, 98 U.S. 145, 158–59, 25 L.Ed. 244 (1879) for support:

> The Constitution gives the accused the right to a trial at which he should be confronted with the witnesses against him; but if a witness is absent by his [the accused's] wrongful procurement, he cannot complain if competent evidence is admitted to supply the place of that which he has kept away. The Constitution does not guarantee an accused person against the legitimate consequences of his own wrongful acts. It grants him the privilege of being confronted with the witnesses against him; but if he voluntarily keeps the witnesses away, he cannot insist on his privilege.

> If, therefore, when absent by his procurement, their evidence is supplied in some lawful way, he is in no condition to assert that his constitutional rights have been violated.

88 P.3d at 794.

In Colorado, four months after *Crawford* was decided, the defendant in the case of *People v. Moore*, challenged the trial court admitting into evidence a prior out-of-court statement made by his deceased wife in a homicide case wherein she was the victim. 117 P.3d 1 (Colo.Ct.App.2004). The Colorado Court of Appeals affirmed the decision, and held that the victim's statements did meet the test of being an excited utterance exception to the hearsay rule. Without discussion as to whether the statements were testimonial, *Moore* held that the defendant had forfeited his right to confrontation on much the same reasoning applied in *Meeks*.

Seven months after *Crawford* was decided in *Ohio v. Nix*, the Ohio Court of Appeals sua sponte addressed the issue of the admittance of a dying declaration and the post-Crawford construction of the Confrontation Clause. No. C–030696, 2004 WL 2315035, (Ohio App. 1 Dist.). The Nix court found that the dying declaration could not be barred because of *Crawford* for two reasons: 1) the statement, though made to a police officer, could not be considered "testimonial"; and 2) the court, referring to the footnote in *Crawford*, found that it did not intend *Crawford* to in anyway affect the dying declaration exception.

Finally, in *People v. Monterroso*, the defendant challenged the admission of the deceased victim's statement describing the defendant, as being his assailant, which was admitted as a dying declaration. 34 Cal.4th 743, 22 Cal.Rptr.3d 1, 101 P.3d 956 (2004). Specifically, the defendant argued

that *Crawford* abrogated the dying declaration exception. However, the California Supreme Court affirmed his conviction and held that the *Crawford* court's review of the history of the confrontation clause yielded an exception for dying declaration.

Even though the case of *Hammon v. State*, 829 N.E.2d 444, 452 (Ind.2005) is not exactly on point, it is instructive herein. Hammon had been charged with domestic battery upon his wife. On the day of the incident, Hammon's wife gave an oral statement to the responding police officers regarding the battery. Prior to trial, Hammon had not been able to confront or cross-examine his wife about her statement and his wife did not testify at his trial. The State instead called the responding police officer as a witness to testify concerning what the wife had said to him about the battery on the day of the incident. Hammon objected to the officer testifying as to the content of his wife's statement on the ground of inadmissible hearsay. The trial court agreed with the State's position that the Wife's statement was an excited utterance, an exception to hearsay and the officer was allowed to testify regarding what Hammon's wife had told him about the alleged battery by Hammon.

In light of *Crawford*, the Indiana Supreme Court granted transfer of *Hammon* to consider whether under the circumstances therein, the contents of wife's statement was properly admitted as an excited utterance, an exception to the hearsay rule under Indiana Rules of Evidence 803(2); and whether its admission violated Hammon's right of confrontation guaranteed by the Sixth Amendment of the United States Constitution. In resolving this dispute, the Court, as well as the *Crawford* Court, was immediately confronted with the task of defining "testimonial" statement. Although the United States Supreme Court did not render a comprehensive definition of "testimonial" statement, our Supreme Court engaged in a careful and thorough analysis of the holding in *Crawford*, and recognizing that a precise definition of "testimonial" statements had yet to be worked out, and after considering the views of the Court of Appeals of Indiana and the views of other jurisdictions, set forth the following definition: "a 'testimonial' statement is one given or taken in significant part for purposes of preserving it for potential future use in legal proceedings." *Id.* at 456.

The Court further reminded Indiana courts that, "[i]n evaluating whether a statement is for purposes of future legal utility, the motive of the questioner, more than that of the declarant, is determinative, but if either is principally motivated by a desire to preserve the statement it is sufficient to render the statement 'testimonial.'" *Id.* "If the statement is taken pursuant to established procedures, either the subjective motivation of the individual taking the statement or the objectively evaluated purpose of the procedure is sufficient." *Id.* Although the primary focus in the *Crawford* analysis was on government involvement, such is not essential to a "testimonial" statement. *Id.* The Court noted, in its view, that the critical component of the evaluative development should be "with an eye toward trial." *Id.*

Pursuant to its analysis, the Court suggested that Indiana courts utilization of the 'use in legal proceedings' test in its evaluative development would be consistent with other language found in *Crawford*, and identified three formal testimonial situations and two substantial equivalents. The three formal situations are: 1) testimony at a preliminary hearing; 2) testimony before a grand jury; and 3) testimony at a former trial; and the two substantial equivalents are: 4)

statements made in 'police interrogation'; and 5) statements made by a defendant incident to entering a guilty plea. *Id.*

### a. Dying Declaration

■ Based on Wallace's submission of the *Crawford* case as authority, without further argument, we infer Wallace's contention to be that the trial court committed reversible error by admitting into evidence the hearsay statements purported to have been made by Wrice, the decedent, wherein Wallace was identified as the shooter. We further infer Wallace's argument to be that said error effectively denied him the right to confront and cross-examine the witness who made the statement against him in trial, a clear violation of his rights guaranteed under the Sixth Amendment to the United States Constitution. And, that even if Wrice's statements were accepted as "dying declarations," their admissibility still amount to a violation of the right of confrontation under the *Crawford* analysis. We disagree.

Wallace has not provided us with any authority that clearly supports his position. To the contrary, we are convinced that *Crawford* neither explicitly, nor impliedly, signaled that the dying declaration exception to hearsay ran afoul of an accused right of confrontation under the Sixth Amendment. *See Crawford*, at 1379, n. 6

### b. Excited Utterance

■ As to Wallace's argument that the trial court erred when it admitted into evidence Wrice's statement as an excited utterance, we will review his argument utilizing our Supreme Court's "use in legal proceedings" test pertaining to "testimonial" statements. *Hammon* at 456. At the beginning of our review, we note that there are no facts or evidence in the record which establish or show the existence of any "formal testimonial situations" or its "substantial equivalents." *Id.* We are also mindful of our Supreme Court's advisement that, "[i]f [a] statement is taken pursuant to established procedures, either the subjective motivation of the individual taking the statement or the objectively evaluated purpose of the procedure is sufficient" to determine if the statement is "testimonial." *Id.* That said, the evidence is undisputed that after Wrice had been shot six times, Ethelyn Harding, who found Wrice shortly after the shooting; the EMT, who responded to the scene of the shooting; and, Wrice's emergency room treating nurse noted in their memory or records Wrice's response to their questions to him. The record is void of any evidence or suggestion that their inquiries of Wrice were "taken in significant part for purposes of preserving it for potential future use in legal proceedings," i.e., "with an eye toward trial." *Id.* Thus, under both *Crawford* and *Hammon*, we conclude that the testimony of Ethelyn Harding, the EMT, and the emergency room treating nurse pertaining to Wrice's answers identifying Wallace as the shooter, were not "testimonial" statements. The trial court did not err in admitting their testimony. Wallace's right to confrontation guaranteed under the Sixth Amendment to the United States Constitution was not violated, and Wrice's statements were properly admitted as excited utterances, a recognized exception to the rule against hearsay. *See* Evid. R. 803(2).

## 2. *Admission of Character Evidence*

Wallace was a local rapper/musician who owned the record label "Ignat Sluefoot" (Tr. 789). He had collaborated in the production of a compact disc (CD) that was released in 1999. The CD, as well as a poster, had photos of Wallace identified as "Will Scrilla." (Ex 20, 21). Both items had been admitted into evidence in the State's case, without objection, and had

linked Wallace with the name "Will Scrilla."

Wallace testified on his own behalf and during cross examination of Wallace, the State asked: "you [Wallace] come to court today and answered the questions in a very respectful tone, thank you.... But I ask you, sir, is that truly your real image or is it not, sir?" (Tr. 785). Defense counsel objected to the question on relevancy grounds. The State responded that it wanted to use the cover of Wallace's CD, which depicted a male wearing a dark cap, t-shirt, and baggy dark pants and with one hand the figure is shown grabbing his crotch and, with the other hand, he is shown holding a firearm at his side. The State argued the CD cover was relevant because Wallace "stated that he had no firearm, he did not shoot. Yet in the same year, 1999, in a copyrighted music CD bearing the logo of his company," there was this violent logo. (Tr. 788). The State further argued that, "he has come to court in his Lord Fount Leroy [sic] suit and his, 'yes, sirs,' and, 'no, sirs' and sounds like an FBI agent." (Tr. 788). The trial court, after noting "the question is, is it something more probative than prejudicial," allowed the State to question Wallace regarding his rapper persona, and the logo on his CD, bearing on who Wallace really is. (Tr. 789).

On appeal, Wallace argues that the evidence was improper character evidence and that the trial court abused its discretion when it allowed such evidence to be admitted. However, at trial Wallace only objected to the admission of the evidence on the ground of relevancy. An appellant may not advance on appeal an argument that was not presented to the trial court. *King v. State*, 799 N.E.2d 42, 49 (Ind.Ct.App.2003). However, it is apparent that the trial court in evaluating the arguments did so with Indiana's Evidence

Rules 404 and 405 in mind. We will accordingly review Wallace's argument under those rules.

We begin by saying that "A trial court is vested with broad discretion in ruling on the admissibility of evidence." *Id.* (citing *Edmond v. State*, 790 N.E.2d 141, 144 (Ind.Ct.App.2003), *trans. denied*). An error in the admission of evidence will not result in reversal of a conviction if the error is harmless. *Id.* "An error will be viewed as harmless if the probable impact of the evidence upon the jury is sufficiently minor so as not to affect a party's substantial rights." *Id.* at 144–45.

Indiana Evidence Rule 404(a)(1) provides:

> Evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion, except: [e]vidence of a pertinent trait of character offered by an accused, or *by the prosecution to rebut the same.*

(Emphasis added). In essence, the State argues that Wallace's denial that he shot Wrice contrasted with his respectful conduct during the trial permits the State to offer character evidence in rebuttal. We disagree.

"When one exercises h[is] right to a trial, [ ]he is pleading not guilty to the crime charged. At trial, the defendant is clothed with the constitutionally protected right to maintain that [ ]he is innocent." *Mayberry v. State*, 605 N.E.2d 244, 250 (Ind.Ct.App.1992). Therefore, we decline to hold that by Wallace maintaining his innocence it was the equivalent of "evidence of a pertinent trait of character offered by an accused" that would invite rebuttal in the form of character evidence. Ind. Evidence Rule 404(a)(1).

Next, the State argues that Wallace's appropriate dress for court and respectful courtroom conduct and demeanor was a character assertion made by Wallace that the State should be allowed to rebut. Again, we disagree. "Rebuttal evidence 'is limited to that which tends to explain, contradict, or disprove evidence offered by the adverse party.'" *Schwestak v. State,* 674 N.E.2d 962, 964 (Ind.1996) (citations omitted). We will not allow the State to attack Wallace's choice of clothing and display of appropriate courtroom demeanor, without more, to be considered character "evidence" which the State may rebut.

Even if the trial court had committed error by allowing the State to use the CD and poster as character evidence, the error was harmless. Both items had been admitted into evidence, without objection by Wallace. The jury had already seen the images of Wallace and his company on the poster and CD, and presumably, any differences in Wallace's appearance and demeanor at trial and in the exhibits were obvious to the jury. Any additional attention the State might have drawn to his appearance and demeanor could not have affected Wallace's substantial rights.

### 3. *Blakely*

Wallace was convicted of voluntary manslaughter, as a class A felony. The trial court sentenced him to thirty-five (35) years, five years above the presumptive sentence for a class A felony. *See* Ind. Code § 35-50-2-4. The trial court found several aggravating factors, including Wallace's criminal history. Our supreme court in *Smylie v. State* held that "the sort of facts envisioned by *Blakely v. Washington* [542 U.S. 296], 124 S.Ct. 2531 [159 L.Ed.2d 403] (2004) as necessitating a jury finding must be found by a jury under Indiana's existing sentencing laws." 823 N.E.2d 679, 687 (Ind.2005). However, *Blakely* held a defendant's criminal history and any aggravators admitted by the defendant may be considered by a trial judge for enhancement of penalty and are not facts required to be found by a jury. *Blakely,* 124 S.Ct. at 2537–2538. Wallace urges us to find that his criminal history is also a fact that must be found by the jury beyond a reasonable doubt. We decline his request. The trial court properly considered Wallace's criminal history as an aggravator.

### 4. *Ineffective Assistance of Trial Counsel*

Wallace argues that his trial counsel was ineffective because he failed to: (1) object as being hearsay the admissibility of the out-of-court statement by the deceased declarant wherein Wallace was identified as being the shooter, (2) redact medical records wherein he was identified him as the shooter, (3) challenge the probable cause affidavit when a witness cited therein did not appear to testify at trial, (4) state an appropriate objection to the State's offering of evidence of Wallace's character or seek a limiting instruction as to its use therein, (5) object when the State, in its closing rebuttal, referred to Wrice's statements as dying declarations, and (6) object to the State's suggestion in closing argument that Wrice would not lie because Wrice would not want to meet God after having lied.

To prevail on a claim of ineffective assistance of trial counsel, a defendant must show not only that trial counsel's performance was deficient, but also that counsel's performance prejudiced him. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Potter v. State,* 684 N.E.2d 1127, 1131 (Ind.1997). To establish the first element of this test, a defendant must show "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant

by the Sixth Amendment," or, stated another way, that counsel's actions fell below an objective standard of "reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 687–88, 104 S.Ct. 2052. *See also Potter*, 684 N.E.2d at 1131.

In evaluating counsel's performance, judicial scrutiny must be highly deferential. The reviewing court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052. A defendant must present strong and convincing evidence to prove otherwise. *Potter*, 684 N.E.2d at 1131.

### Hearsay Statements

Wallace argues that his trial counsel was ineffective for failing to object to the out-of-court hearsay statements identifying him as the shooter. As we stated above, both of the statements qualify to be admitted under either an excited utterance exception or a dying declaration exception in Indiana. Wallace has therefore failed to demonstrate counsel's performance fell below an objective standard of reasonableness.

### Medical Records

■ Wallace asserts that trial counsel's failure to redact Wrice's medical records, wherein "Will S" is identified as the shooter, was ineffective assistance of counsel; but, Wallace does not argue, explain in his brief or tell us how he was prejudiced in the matter. (St.Ex. 18). Before the medical records were entered into evidence, three witnesses had already testified to Wrice's identification of Wallace as the shooter. Therefore, trial counsel's failure to redact the medical records which indicated "Will S" as being the shooter did not prejudice Wallace at trial.

### Probable Cause Affidavit

The probable cause affidavit included a statement from Lakisha L. Brooks, as follows:

> she stated that on September 14, 1999 at approximately 11:00 p.m. she was at the corner of Drackert and Tapper in Hammond, Indiana together with several people including a person she knew as 'Will Scrilla.' She further stated that Gerald Wrice was walking down Tapper Street and he spoke with them and that "Will Scrilla" punched him in the face and that Gerald and "Will Scrilla" got into a fist fight and they were both fighting on the ground when she heard what sounded like a gunshot and she heard Gerald say, 'Will Scrilla is it like that.' She further stated that 'Scrilla' got up and she heard several more shots. She further stated that she saw 'Will Scrilla' standing over Gerald and saw 'several gun flashes going off.' She further stated that after that she saw 'Will Scrilla' run away."

(App.10). Wallace argues that when Lakisha Brooks failed to appear in court, trial counsel should have "challenged the probable cause affidavit ... but failed to do so." Wallace's Br. 15. This is the extent of Wallace's argument on this point. Indiana Appellate Rule 46(8)(a) states, "The argument must contain the contentions of the appellant on the issues presented, supported by cogent reasoning." Absent such argument, we cannot say Wallace's trial counsel was ineffective for failing to challenge the affidavit. Further, since the probable cause affidavit was not admitted into evidence, trial counsel was not ineffective for failing to challenge it.

### Character Evidence

Wallace argues that trial counsel was ineffective for not properly objecting to the State's attempt to offer character evidence

when he had not put his character into evidence at trial. As explained above, the CD and poster had already been admitted into evidence, without objection, when the State made reference to them. Further, the jury could draw whatever conclusions it wanted to upon viewing the admitted evidence. Wallace has failed to demonstrate how he was prejudiced by the State's reference to his character as depicted in the exhibits.

*State's Rebuttal Argument*

 We do not find trial counsel to be ineffective for failing to object to the State's reference to Wrice's statements as being dying declarations, as the statements could have been admitted into evidence either as an excited utterance or a dying declaration. Nor was counsel ineffective for failing to object to the State's comment suggesting that Wrice believed in God and, therefore, was less likely to have lied regarding the identity of the shooter. Wallace is correct that the prosecutor should not have commented on Wrice's belief in God, inferring that Wallace would be less likely to have lied regarding the identity of the shooter in his statement. However, we find that in light of the other evidence, the reference to Wrice's belief in God had no impact on the jury's verdict of Wallace's guilt; and, therefore, Wallace was not prejudiced by the comment. Furthermore, the trial court properly instructed the jury that "whatever the attorneys say is not evidence." (Tr. 805).

We affirm the conviction.

### POST CONVICTION RELIEF ISSUES

 A petitioner seeking post conviction relief has the burden of establishing his grounds for relief by a preponderance of the evidence. Ind. Post–Conviction Rule 1(5). Wallace's petition for post-conviction relief was denied. Therefore, he appeals a negative judgment. *See Barker*

*v. State*, 812 N.E.2d 158, 162 (Ind.Ct.App. 2004), *trans. denied.* The trial court's denial of a petition for post conviction relief will not be reversed unless Wallace presents evidence that as a whole, leads to a conclusion opposite that reached by the post-conviction court. *Id.* "We accept the post-conviction court's findings of fact unless they are clearly erroneous, but we do not have to give deference to the post-conviction court's conclusions of law." *Douglas v. State*, 800 N.E.2d 599, 604, (Ind.Ct.App.2003), *trans. denied.*

 Wallace based his claim for post-conviction relief on newly discovered evidence that was not available at trial. Specifically, he points to the testimony of Brooks given at his post-conviction relief hearing wherein she recanted her prior statements and testified that she was looking at Wallace when the shots were fired and that Wallace did not have a gun.

In order for newly-discovered evidence to merit relief, the claimant must establish each of the following prongs: (1) that the evidence was not available at trial; (2) that it is material and relevant; (3) that it is not cumulative; (4) that it is not merely impeaching; (5) that it is not privileged or incompetent; (6) that due diligence was used to discover it in time for trial; (7) that the evidence is worthy of credit; (8) that it can be produced upon a retrial of the case; and (9) that it will probably produce a different result. *Thompson v. State*, 796 N.E.2d 834, 838 (Ind.Ct.App.2003), *reh'g denied, trans. denied,* (citing *Wisehart v. State*, 693 N.E.2d 23, 33–34 (Ind.1998)). Wallace's challenge is directed at the last three prongs.

The trial court found Brooks' testimony unworthy of belief, that it was unlikely Brooks could be produced at a retrial, and that it was unlikely that Brooks' testimony would change the outcome because it was

"vague, inconsistent, self-contradictory, and refuted by the overwhelming evidence presented at trial." (App.239). The jury found Wallace guilty based upon the evidence presented in open court which did not include the probable cause affidavit or reference to an eyewitness therein. Therefore, Brooks' testimony, given its unreliable nature, weighed against the evidence that was presented to the jury would not likely produce a different outcome on retrial. Further, it is unlikely Brooks would participate in a retrial given her marked reluctance to participate in the hearing on Wallace's petition for post-conviction relief. Therefore, we conclude that Wallace has failed to prove Brooks' testimony qualifies as newly discovered evidence.

Finally, Wallace raises the issue of judicial estoppel. He asserts the State found Brooks credible when it included information provided by her statement in the probable cause affidavit and, therefore, it should not be later allowed to challenge her credibility when she recants. Wallace did not raise this argument before the post-conviction court and the record is void of any evidence that Brooks' statement in the probable cause affidavit played any role in the conviction of Wallace. Therefore the argument is waived on appeal. *See Miller v. State,* 716 N.E.2d 367, 370 (Ind.1999) (failure to preserve an issue at trial results in waiver of the issue on appeal.).

We affirm the denial of post-conviction relief.

MAY, J., and BARNES, J., concur.