**Robert Joe ANTHONY, Appellant
(Defendant below),**

v.

**STATE of Indiana, Appellee
(Plaintiff below).**

No. 1179S311.

Supreme Court of Indiana.

Sept. 25, 1980.

Sharon Carroll Clark, Gregg & Clark, Anderson, for appellant.

Theodore L. Sendak, Atty. Gen., Wesley Wilson, Deputy Atty. Gen., Indianapolis, for appellee.

HUNTER, Justice.

The defendant, Robert Joe Anthony, was convicted by a jury of attempted manslaughter, Ind.Code §§ 35–41–5–1 and 35–42–1–3 (Burns 1979 Repl.), and robbery, a class A felony, Ind.Code § 35–42–5–1 (Burns 1979 Repl.). He was sentenced to ten years and thirty years respectively, the sentences to run concurrently. He now appeals raising the following issues:

1. Whether the trial court erred in permitting one witness to testify when she allegedly violated the court's order of separation of witnesses;

2. Whether the trial court erred in admitting into evidence defendant's out–of–court statements to police without sufficient independent evidence of the corpus delicti;

3. Whether the trial court erred in permitting the state to reopen its case after having rested; and

4. Whether the verdict of the jury is contrary to law and is not supported by sufficient evidence.

A summary of the facts most favorable to the state shows that defendant and Roy Cobble were both at The Trade Winds Tavern in Anderson, Indiana, on the evening of July 12, 1978, and stayed until the closing time of three o'clock the next morning. The two men left in Cobble's truck and had talked about smoking some "pot" and looking for girls. Cobble stopped in an alley

and there apparently was an argument between the men. Defendant and Cobble got out of the truck and defendant hit Cobble on the head with a shovel. He took Cobble's wallet and walked to a friend's house.

Ivan Sheedy's backyard was on the alley where Cobble had stopped the truck. Sheedy woke up in the early morning of July 13, 1978, and heard a car door shut near his backyard. He went out his back door and turned on a 300–watt yard light. He saw a pickup truck near his house and some commotion going on behind the windshield. Sheedy then turned off his light and went back into his house to get dressed. When he came out again in a few minutes he turned the light on again. He saw a tall man walking away from the truck and another man lying on the ground beside the truck. The injured man apparently noticed the light and tried to get up several times but fell back again. Finally, he succeeded in getting up and walking to Sheedy's back steps where he fell down unconscious. Sheedy saw the man was bleeding from a wound on the head and called the police. The police found bloodstains in the interior of Cobble's truck as well as on the shovel lying outside the truck. Cobble suffered a severe blow to the head and was still in a coma nine months later at the time of the trial.

When defendant left Cobble at the truck he went to the home of Debra Pritt where his friend Bill Garland, alias "Shilo," was watching television. Pritt testified that she had gone to bed about ten o'clock on the evening of July 12, 1978, but woke up about four o'clock the next morning. She got up and went through the kitchen to the bathroom. She saw defendant and Shilo talking in the kitchen. When she came out of the bathroom, the men had gone. She found a billfold on the kitchen table which proved to belong to Cobble. She also found torn up pictures and cards containing Cobble's name in her trash.

After leaving Debra Pritt's home, defendant and Shilo went to the home of Sherry Couch. Couch asked them what they were doing out so early in the morning and defendant answered that he had just beat a man with a shovel and taken his billfold. He was disappointed that the billfold only had two dollars and forty cents in it.

Defendant's voluntary statement which was admitted into evidence was that when he and Cobble got out of the truck Cobble said something about killing him. Defendant thought he saw a knife in Cobble's hand so he pushed him away with a shovel. He stated he did not take anything from Cobble and Cobble got up and got into his truck before defendant walked away.

### I.

Defendant first contends that it was error for the trial court to permit one witness to testify over the objection that she had violated the court's order for separation of witnesses. The witness, Rosa Jones, testified that she was a friend of Roy Cobble. She identified the billfold which had been found at Debra Pritt's home as belonging to Cobble because it was a billfold she had given him on his birthday. Her testimony came after the police officers and Ivan Sheedy had testified.

It is well settled that separation of witnesses at a trial is wholly within the discretion of the trial court as it is required by neither statute nor common law. *Johnson v. State*, (1972) 258 Ind. 648, 283 N.E.2d 532; *Wilson v. State*, (1970) 253 Ind. 585, 255 N.E.2d 817. The court's discretionary rulings in this area will not be disturbed unless there is a manifest abuse of discretion. *Dudley v. State*, (1970) 255 Ind. 176, 263 N.E.2d 161.

Here, Jones's testimony was very brief and concerned only the identification of Cobble's billfold. Preceding testimony was not likely to have had any effect on her testimony since the billfold had already been identified through the torn cards found in Debra Pritt's trash can. We find no error in the court's discretionary action.

### II.

After defendant's arrest, he gave a statement to police admitting his presence in

Cobble's truck on the night of the crime, but denying involvement in the robbery or beating. This statement was admitted into evidence over defendant's objection and read to the jury. Sherry Couch was also permitted to testify over defendant's objection concerning certain alleged admissions made to her by defendant. Defendant now argues that the trial court erred in admitting these out–of–court statements into evidence without sufficient independent evidence of the corpus delicti.

■ It is well settled that circumstantial evidence is sufficient to prove the corpus delicti to corroborate an extrajudicial confession. *Cambron v. State*, (1975) 262 Ind. 660, 322 N.E.2d 712; *Jones v. State*, (1969) 253 Ind. 235, 252 N.E.2d 572. For the preliminary purpose of determining whether the out–of–court statements are admissible, the state does not have to prove the corpus delicti beyond a reasonable doubt but must introduce independent evidence of the occurrence of the specific injury and somebody's criminal act as the cause of the injury. *Cambron v. State, supra.*

■ Here there was sufficient independent evidence of these elements before defendant's out–of–court statements were admitted. The testimony had established that Cobble had suffered a very severe blow to his head and was found unconscious a short distance from his truck. A shovel with bloodstains on it was found lying beside his truck. An individual who lived near where the truck was stopped had seen two men struggling inside the truck and then later had seen one man walking away from the truck. Cobble's billfold was found on Debra Pritt's kitchen table after defendant and a friend were in her kitchen. We find no error in the admission of the out–of–court statements.

### III.

At the conclusion of the state's case, defendant made a motion for directed verdict arguing that the state had failed to prove the essential element of venue. The state then moved to reopen the case to establish venue. The trial court granted the state's motion. Although specific street addresses had been established during the state's case, the fact that these addresses were all within the city of Anderson had not been established. Defendant now argues that it was error for the trial court to entertain the state's motion to reopen the case before ruling on his motion for directed verdict.

■ This issue has been answered in *Maxey v. State*, (1969) 251 Ind. 645, 244 N.E.2d 650, *cert. denied* 397 U.S. 949, 90 S.Ct. 969, 25 L.Ed.2d 130. There the state was also permitted to reopen its case to prove venue after the defendant had moved for a directed verdict. The ruling of the trial court was upheld and we stated:

"It has long been held that the action of a trial court in allowing a party to reopen its case after it has rested is a matter of discretion for the court, and, unless clear abuse is shown, this court will not interfere with such a decision by the trial court." 251 Ind. at 651, 244 N.E.2d at 654.

*Accord: Luckett v. State*, (1972) 259 Ind. 174, 284 N.E.2d 738. Defendant has not demonstrated that he was unfairly prejudiced by the trial court's procedure in permitting a more complete presentation of all the facts relating to the instant crime. We find no abuse of discretion here.

### IV.

Defendant was originally charged with attempted murder, a class A felony, Ind. Code §§ 35–41–5–1 and 35–42–1–1 (Burns 1979 Repl.). The jury's verdict found him guilty of attempted manslaughter, Ind.Code § 35–41–5–1 and 35–42–1–3 (Burns 1979 Repl.). Defendant first argues that there is no statutory crime of attempted manslaughter and therefore it was error for the trial court to sentence him for this crime.

Ind.Code § 35–41–5–1(a) provides in pertinent part:

"A person attempts to commit a crime when, acting with the culpability required for commission of the crime, he engages in conduct that constitutes a substantial step toward commission of the

crime. An attempt to commit a crime is a felony or misdemeanor of the same class as the crime attempted."

It is clear that this general attempt statute applies to any crime, limited only by the requirements of "culpability" and "conduct that constitutes a substantial step toward commission of the crime." *Zickefoose v. State*, (1979) Ind., 388 N.E.2d 507. The requirement of culpability means that there must be an intent to commit the crime and therefore it has been found there can be no crime of attempted reckless homicide. *Rhode v. State*, (1979) Ind.App., 391 N.E.2d 666. However, since both murder and voluntary manslaughter can be proved by evidence of the knowing or intentional killing of another human being, *Wallace v. State*, (1979) Ind.App., 395 N.E.2d 274, the requirement of culpability is satisfied and the crime of attempted manslaughter does exist under our present statutes.

Defendant finally argues that there was not sufficient evidence of intent to kill or of sudden heat. Upon a review for sufficient evidence, this Court will neither reweigh the evidence nor judge the credibility of witnesses. *Wofford v. State*, (1979) Ind., 394 N.E.2d 100. Rather, we will look only to that evidence most favorable to the state and all reasonable inferences to be drawn therefrom. If there is substantial evidence of probative value to support the conclusion of the trier of fact, the verdict will not be overturned. *Poindexter v. State*, (1978) 268 Ind. 167, 374 N.E.2d 509.

Here there was evidence that the victim had received a very severe blow to the head with a shovel and his billfold had been taken. The blow was so severe that it caused intracranial bleeding and the victim was still in a coma nine months after the attack. State of mind may be established by the circumstances surrounding the killing and the method of killing. *Blood v. State*, (1980) Ind., 398 N.E.2d 671; *McKinstry v. State*, (1975) 264 Ind. 29, 338 N.E.2d 636. The intent to kill may be inferred from the deliberate use of a deadly weapon in a manner likely to cause death or great bodily harm. *Petro v. State*, (1978) Ind.,

383 N.E.2d 323; *Ortiz v. State*, (1976) 265 Ind. 549, 356 N.E.2d 1188. Although defendant stated that he was only protecting himself from attack, it was the prerogative of the jury to weigh this testimony in light of all the circumstances surrounding the crime including the severity of the blow to the victim's head. We find there was sufficient evidence from which the jury could infer the intention to kill.

Defendant further argues that it was necessary for the state to prove the existence of sudden heat as an element of attempted manslaughter before he could be found guilty of that crime. We disagree. As we have found above, both murder and voluntary manslaughter can be proved by evidence of the knowing or intentional killing of another human being. Because the two offenses can be established by the same material elements, voluntary manslaughter is a lesser included offense of murder. The existence of sudden heat is a mitigating factor and is not an element of voluntary manslaughter. *Wallace v. State, supra.* Therefore, since the evidence here was sufficient to establish an intentional attempt to kill another human being and could have supported a jury verdict of guilty to the charge of attempted murder, the jury could also return a verdict of attempted manslaughter, as a lesser included offense, notwithstanding the lack of proof of sudden heat.

For all of the foregoing reasons, there was no trial court error and the judgment of the trial court should be affirmed.

Judgment affirmed.

GIVAN, C. J., and DeBRULER, PRENTICE and PIVARNIK, JJ., concur.