**Thomas EDMOND, Appellant–Petitioner,**

v.

**STATE of Indiana, Appellee–Respondent.**

No. 45A03–0209–PC–321.

Court of Appeals of Indiana.

June 17, 2003.

Nathaniel Ruff, Appellate Public Defender, Crown Point, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Christopher C.T. Stephen, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

DARDEN, Judge.

### STATEMENT OF THE CASE

Thomas Edmond appeals from the denial of his postconviction petition for relief that was filed under the *Davis/Hatton* procedure.[1] Edmond presents his appeal in the manner of a direct appeal.

We affirm.

### ISSUE

Whether the trial court erred by allowing the State to present inadmissible evidence through the "artifice of impeaching" a witness with the witness' prior extrajudicial statement.

---

1. The procedure "involves a termination or suspension of a direct appeal already initiated, upon appellate counsel's motion for remand or stay, to allow a postconviction relief petition to be pursued in the trial court." *State v. Lopez,* 676 N.E.2d 1063, 1069 (Ind.Ct. App.1997) (citing *Davis v. State,* 267 Ind. 152, 368 N.E.2d 1149 (1977), and *Hatton v. State,* 626 N.E.2d 442 (Ind.1993)).

## FACTS

In December 1999, Edmond was charged with three counts: murder, attempted murder, and battery as a class C felony. Edmond's jury trial was held in November 2000. The jury was instructed on voluntary manslaughter as a lesser-included offense of murder. The jury returned verdicts of guilty to voluntary manslaughter, attempted murder, and battery. Edmond was sentenced to consecutive 30–year terms of imprisonment for voluntary manslaughter and attempted murder. The trial court determined that the battery verdict was subsumed by the attempted murder verdict and did not impose a separate sentence for battery.

Edmond initiated a direct appeal. In July 2001, this court granted Edmond's request to suspend the appeal while he pursued an evidentiary hearing for the purpose of taking additional evidence to support his appeal pursuant to the *Davis/Hatton* procedure. After a motion to quash subpoenas was granted by the postconviction court, only the postconviction hearing was conducted—no other evidentiary proceedings occurred. Although Edmond raised two issues in his petition, one on sentencing and the other regarding admission of the impeachment testimony, he presented no evidence or argument at the hearing regarding the sentencing issue. He does not raise the sentencing issue within this appeal.

On September 5, 2002, the court entered findings of fact, conclusions of law and its order denying the petition for postconviction relief. The postconviction court summarized the underlying facts:

Edgar Davis was a steel mill worker. Sometime in the summer or fall of 1999, he opened a neighborhood bar and lounge in Hammond, Indiana: Mr. D's. Davis established, and posted, rules concerning patronage of the bar. Included in these rules was a prohibition against entering the bar with a drink, even if one had purchased it at Mr. D's earlier in the evening, left with it, and returned. Davis employed his son, Tyrone, to work at the door in order to enforce the rule prohibiting entry (or re-entry) with a drink.

Sometime in November of that year, the defendant, Thomas Curtis Edmond, came to Mr. D's for the first time. When he left the establishment and returned with a drink, Tyrone Davis denied him reentry unless and until he finished his drink. Edmond ignored Tyrone, entered Mr. D's and sat at the bar. Mr. Davis and Tyrone confronted Edmond who pushed Mr. Davis. Davis drew a weapon and called the police. The police removed Edmond who left proclaiming that the bar was "raggedy" and he would "come back and shoot it up." Mr. Davis barred Edmond from returning to Mr. D's in the future.

In the month that followed, the defendant repeatedly returned to the bar, apologizing and asking to be admitted. Ultimately, Mr. Davis accepted Edmond's apology but still declined to admit him. . . .

On December 19, 1999, at approximately 2:30 a.m., Edmond and two friends came to the bar, again apologizing, again asking to be admitted. Tyrone and Edgar repeatedly told Edmond to leave. When he refused to go, Edgar struck him with his hand and then with a gun. A fight began. Tyrone Davis pushed Edmond's friends out the door and pulled Edmond into the bar. Then, the Davis[es] began beating Edmond. They pushed him out the door some five minutes after the fighting began. According to Tyrone, Edmond came back in the bar fifteen to twenty seconds later and shot first Edgar and then Tyrone

Davis. After shooting Tyrone, Edmond continued to shoot [Edgar]. Witness Neamon Walton, who was standing in a doorway of Mr. D's when the shooting started, testified that the "Edmond boy" reached around him in the doorway and started shooting. Edgar Davis died as a result of the gunshot wounds. [Record of Proceedings ..., pp. 129–147, 291, 361–62].

(App. 254–55).

In support of the denial of relief, the court determined that Edmond's failure to present evidence or argument on the sentencing issue resulted in waiver, and that the evidence did not support a determination that the State's sole purpose in presenting the testimony of Walton was to impeach him with a prior unsworn statement to police. The postconviction court noted that the jury had been instructed, at the time the statement was admitted into evidence, that it could not be used as substantive evidence; however, the court determined that the statement might have been admissible as substantive evidence had the State sought its admission for identification purposes pursuant to Indiana Evidence Rule 801(d)(1)(C). The postconviction court determined that one victim, Tyrone Davis, positively identified Edmond as the shooter; thus, implicitly holding that any possible error was harmless.

### DISCUSSION

Here, Edmond employed the *Davis/Hatton* procedure to suspend his direct appeal in order to present additional evidence to be included in the record of proceedings. As noted in footnote 1, the procedure was explained in *State v. Lopez*, 676 N.E.2d 1063, 1069 (Ind.Ct.App.1997) (citing *Davis v. State*, 267 Ind. 152, 368 N.E.2d 1149 (1977), and *Hatton v. State*, 626 N.E.2d 442 (Ind.1993)). The *Lopez* court expounded:

If after a full evidentiary hearing, the [postconviction] relief petition is denied, the appeal can be reinitiated. Thus, in addition to the issues initially raised in the appeal, the issues litigated in the postconviction relief proceeding (e.g., ineffectiveness of trial counsel) can also be raised. In this way, even if the trial court denies the postconviction claim ..., a full hearing and record on the issue will be included in the appeal.

*Id.* Once the petition for postconviction relief is denied after a hearing, and the direct appeal is reinstated, the direct appeal and the appeal of the denial of postconviction relief are consolidated. *See Powell v. State*, 714 N.E.2d 624, 626 (Ind. 1999).

Here, Edmond initiated the procedure ostensibly to take evidence from the deputy prosecuting attorney who tried his case, and that of the attorney's supervisor, in order to determine whether Walton was called as a witness for a purpose other than impeaching him with his prior unsworn statement. The trial court granted the attorneys' motion to quash the subpoenas. Thus, no additional evidence was taken pursuant to the *Davis/Hatton* procedure. Edmond proceeds in the present appeal as if it is a direct appeal.

Edmond urges that the State presented the testimony of a witness for the sole purpose of impeaching the witness with a prior unsworn statement. Edmond relies upon two recent cases: *Griffin v. State*, 754 N.E.2d 899 (Ind.2001), and *Appleton v. State*, 740 N.E.2d 122 (Ind.2001).

 A trial court is vested with broad discretion in ruling on the admissibility of evidence. *Appleton*, 740 N.E.2d at 124. Moreover, an error in admission of evidence will not result in reversal of a conviction if the error is harmless. *Id.* "An error will be viewed as harmless if the

probable impact of the evidence upon the jury is sufficiently minor so as not to affect a party's substantial rights." *Id.*

In *Appleton,* the State called a witness who was present at the scene of the incident and whose prior extrajudicial statement to police implicated the defendant. At trial, the State was allowed to impeach the witness with substantial excerpts from his statement to the police when the witness testified that the defendant was not present at the time of the incident. Noting that the witness was present at the scene and owned the home where the incident began, the *Appleton* court stated that it could not definitively determine that the witness was placed on the stand for the sole purpose of impeaching him with his prior statement. *Id.* at 125. However, the court noted that once the witness admitted that he had made a different statement to police, he had been revealed as a liar; thus, the impeachment was complete. *Id.* While it was improper to admit into evidence substantial portions of the statement, the error was harmless because the substance of the inadmissible evidence was similar to that admitted through another witness. *Id.* at 126–27.

In *Griffin,* the court determined that the trial court did not err by sustaining a hearsay objection to testimony from a witness called by the defense as a hostile witness. The court noted that the witness was not present at the occurrence and his testimony was offered by the defense for the sole purpose "to create the opportunity to impeach him with his pretrial statement" made to an attorney. *Griffin,* 754 N.E.2d at 904. Quoting from *Appleton,* the court in *Griffin* stated: "We recently held ... that under [Indiana Evidence] Rule 607 'a party is forbidden from placing a witness on the stand when the party's sole purpose in doing so is to present otherwise inadmissible evidence cloaked as

impeachment.'" *Id.,* (quoting *Appleton,* 740 N.E.2d at 125).

The *Griffin* court expanded upon the forbidden nature of such impeachment:

We agree ... that "[T]he rule allowing a party to impeach his own witness may not be used as an artifice by which inadmissible matter may be revealed to the jury through the device or offering a witness whose testimony is or should be known to be adverse in order, under the name of impeachment, to get before the jury a favorable extrajudicial statement previously made by the prior witness."

*Griffin,* 754 N.E.2d at 904 (citations omitted).

Here, Walton was present at the scene and his testimony was substantially corroborated by the testimony of Tyrone Davis. Only Walton and Tyrone Davis claimed to have actually seen segments of the shootings. Also, portions of Walton's testimony were corroborated by other witnesses. Willie Williams did not observe the entire initial altercation, but he identified Edmond as having been in the altercation with Edgar and Tyrone Davis, and as having been in the bar's parking lot with a gun when Williams was leaving the premises. Katrina Jacobs also identified Edmond as having been in the altercation with Edgar and Tyrone Davis. Jacobs testified that she observed that Edmond was bleeding, that he was forced out of the bar, that someone gained entry at the other door, and then the shooting started, whereupon someone "threw [her] down the hall." (Tr. 260).

Walton's trial testimony was not significantly different from his prior extrajudicial statement to police. In Walton's statement to police he identified Edmond as the shooter. His trial testimony differed only to the extent that Walton could not unequivocally state that he had seen the shooter's face. Walton did testify that

based upon his observations made at the time of the incident including a back-view of the shooter, a side-view of the shooter, the shooter's attire, the shooter's hair, and having seen Edmond in the neighborhood over a seven-year period, he could identify the shooter as "the Edmond boy." (Tr. 350, 357, 361–62). At trial, Walton identified Edmond as the person who he had referred to as "the Edmond boy." (Tr. 363–64).

■ Thus, unlike the circumstances in *Griffin*, Walton was present at the scene and was able to give a first-hand account of the events. *Griffin*, 754 N.E.2d at 904 (no error in excluding testimony by witness not present at scene and for sole purpose of gaining admission of hearsay evidence from statement made to attorney). We cannot say that Walton's testimony was offered for the sole purpose of impeaching him with his prior statement in which he had identified Edmond as the shooter.

■ Additionally, any possible error in the admission of the evidence would have been harmless under the analysis in *Appleton*. Walton's testimony, including the identification of Edmond as the shooter, was substantially similar to the testimony by Tyrone Davis. *See Appleton*, 740 N.E.2d at 122 (error in admission of hearsay evidence typically harmless where merely cumulative of other properly admitted evidence).

Accordingly, Edmond has failed to present reversible error. The judgment of the postconviction court is affirmed.

BAKER, J., concurs.

SULLIVAN, J., concurs in part and dissents in part with separate opinion.

SULLIVAN, Judge, concurring in part and dissenting in part.

I agree with the majority that Edmond failed to establish that Walton's trial testimony was offered for the sole purpose of impeaching him with a prior statement. I further agree that even if it was error to admit such testimony, the error was harmless. However, I am unable to fully concur because I believe it necessary to sua sponte note that the conviction for Battery as a Class C felony should be vacated.

Following the trial, the court specifically entered judgment upon the Battery conviction, as well as upon the convictions for Voluntary Manslaughter and Attempted Murder. Although the trial court found that the Battery conviction "merges" with the Attempted Murder count, and did not impose a sentence upon the Battery conviction, such withholding of sentence is not adequate.

The judgment of conviction for Battery remained in place and must be vacated. *Carter v. State*, 750 N.E.2d 778 (Ind.2001); *Kochersperger v. State*, 725 N.E.2d 918 (Ind.Ct.App.2000); *Spry v. State*, 720 N.E.2d 1167 (Ind.Ct.App.1999), *trans. denied; Cohen v. State*, 714 N.E.2d 1168 (Ind.Ct.App.1999), *trans. denied.*