Randy GIBBS, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A02–0712–CR–1017.

Court of Appeals of Indiana.

Dec. 31, 2008.

Elizabeth A. Gabig, Marion County Public Defender Agency, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Arturo Rodriguez II, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

VAIDIK, Judge.

### Case Summary

As a result of an online sting operation, Randy Gibbs was convicted of Class B felony attempted sexual misconduct with a minor, Class C felony child solicitation, and Class D felony attempted dissemination of matter harmful to minors. We hold that pursuant to *Aplin v. State*, 889 N.E.2d 882 (Ind.Ct.App.2008), *reh'g denied, trans. denied*, Gibbs cannot be convicted of attempted sexual misconduct with a minor and attempted dissemination of matter harmful to minors because the intended victim was not actually a minor and therefore reverse those convictions. Finding no error in Gibbs' other argument and concluding that he has failed to persuade us that the sentence for his remaining conviction is inappropriate, we affirm in part and reverse in part.

### Facts and Procedural History

In July 2006, Indianapolis Metropolitan Police Department Detectives Darin Odier and Shani Anderson conducted an online sting operation. They created a profile of a fictitious fifteen-year-old girl with the screen name samantha_dyer61. "Samantha's" profile included a picture of a girl in a cheerleading uniform, and the "Latest News" section stated, "I am a very cool 15 year old." Ex. p. 34.

On July 10, 2006, the detectives entered an Indiana chat room using Samantha's screen name and waited to see if they would be contacted. Samantha was contacted by "rfg452005" (later determined to be Gibbs), who asked, "You like sex a lot?" Tr. p. 168. Samantha said yes and indicated she was a fifteen-year-old female from Indianapolis. Gibbs then asked, "what is your favorite position?" Ex. p. 9.[1] Samantha answered the question and again indicated she was fifteen. Gibbs asked whether she liked older guys and "whats the oldest u been with?" *Id.* Samantha indicated she had sex with a seventeen-year-old and a twenty-six-year-old. Gibbs then stated, "i love young pu* *y." *Id.*

---

1. Quotations from the online conversations are reproduced exactly as they were typed, including errors.

The conversation continued in an explicitly sexual tone. Gibbs asked Samantha questions about her breasts, vagina, and clothing. He requested nude pictures and asked if she had a webcam. He asked her numerous questions about her sexual experiences and interests. Gibbs asked "are u kinky any?" *Id.* Samantha asked what he had in mind, and Gibbs replied, "tieing u up in different positions and tease u." *Id.* He asked, "u ever been tied up before?" *Id.* Samantha said, "no is it scary." *Id.*

Gibbs invited Samantha to view his penis via his webcam. The detectives viewed a live video of Gibbs masturbating. Gibbs asked Samantha whether she was "playing with yourselve now." *Id.* at 11. Samantha said she was "not real good at it," *id.*, and Gibbs instructed her how she should touch herself.

Gibbs asked Samantha if she minded him being forty-five. She said, "not at all u mind me being 15." *Id.* at 12. Gibbs said, "nope as long u not get me into trouble cause u are under age," and he acknowledged Samantha was "elegal right now." *Id.*

Gibbs asked Samantha if she was home alone. She said her father was home and told Gibbs he was a truck driver. Gibbs asked, "u have guys over there to have fun." *Id.* at 11. Samantha said, "sometimes." *Id.* Later, Gibbs steered the conversation toward meeting in person:

    rfg452005: so when is your dad going to be gone over the road
    samantha_dyer61: later this week why?
    rfg452005: maybe we can meet up if u like and go from there
    samantha_dyer61: maybe what do you wanna do?
    rfg452005: eat and lick your hot pu* *y
*Id.* at 12.

Gibbs contacted Samantha again on July 18, 2006. Samantha asked if he was busy the next day and indicated her dad would be gone. Gibbs said, "well i do not get off work till 5pm." *Id.* at 22. Samantha responded, "that's kool i will just be chillin." *Id.* Gibbs asked, "where are u located again," and Samantha gave detailed directions to an apartment in Indianapolis. *Id.*

Gibbs asked if it would bother her that his right index finger was missing. Samantha said it would not and asked his first name. Gibbs told her his name was Randy.

Gibbs asked her if she was behind closed doors and again initiated a series of questions about her sexual experiences and interests. Samantha asked, "u r gonna teach me a lot 2morrow arent u?" *Id.* at 24. Gibbs said, "yup," and again asked her about being tied up. *Id.* Samantha asked if he would hurt her, and Gibbs said, "i'm not into that sort of thing," and explained he wanted to "hog[ ] tie u up and maybe tie u up spread eagle on the bed." *Id.* at 26. Samantha said, "that sounds a bit scary," and he promised he would not hurt her. *Id.*

He wanted to know if she was masturbating and again showed himself masturbating on his webcam. Gibbs continued to give instructions about things she should try.

On July 19, 2006, Gibbs talked to Samantha online, confirmed he was coming, and asked for her cell phone number. He then called, and Detective Anderson, pretending to be Samantha, gave him detailed directions. Gibbs said, "You done seen me on the cam. I haven't seen you yet." *Id.* at 87. Detective Anderson said, "I'm kind of tall and skinny. So I hope that doesn't bother you." *Id.* Gibbs responded, "No . . . as long as your pu* *y tastes good." *Id.* Gibbs called again when he reached the apartment complex, and Detective

Anderson explained how to open the gate and directed him to an apartment where officers were waiting to arrest him. The police found rope and condoms in Gibbs' pockets.

The State charged Gibbs with Class B felony attempted sexual misconduct with a minor,[2] Class C felony child solicitation,[3] Class D felony attempted vicarious sexual gratification,[4] and Class D felony attempted dissemination of matter harmful to minors.[5] A jury found Gibbs guilty as charged. The trial court did not enter judgment of conviction on attempted vicarious sexual gratification, finding it merged with child solicitation. The trial court imposed ten years with five years suspended for attempted sexual misconduct with a minor, four years with two years suspended for child solicitation, and one-and-a-half years, all suspended, for attempted dissemination of matter harmful to minors. The court ordered the first two sentences to be served consecutively, for an aggregate sentence of seven years executed and seven years suspended. Gibbs now appeals.

**Discussion and Decision**

Gibbs raises several issues on appeal, one of which is dispositive of several issues and which we rephrase as whether he can be convicted of attempted sexual misconduct with a minor and attempted dissemination of matter harmful to minors when the intended victim is not actually a minor. He also argues that the trial court abused

2. Ind.Code §§ 35–41–5–1 (attempt) & 35–42–4–9 (sexual misconduct with a minor).

3. Ind.Code § 35–42–4–6.

4. Ind.Code §§ 35–41–5–1 (attempt) & 35–42–4–5 (vicarious sexual gratification).

5. Ind.Code §§ 35–41–5–1 (attempt) & 35–49–3–3 (dissemination of matter harmful to minors).

its discretion by admitting photographs of him in handcuffs and that his sentence is inappropriate in light of his character and the nature of his offense.

**I. Intended Victim is Not a Minor**

Gibbs contends that pursuant to *Aplin v. State,* 889 N.E.2d 882 (Ind.Ct.App.2008), *reh'g denied, trans. denied,* he cannot be convicted of attempted sexual misconduct with a minor and attempted dissemination of matter harmful to minors because the target of these offenses was not a minor. In *Aplin,* the defendant, Matthew Aplin, had online conversations with a detective from the Fishers Police Department who was posing as a fifteen-year-old girl with the screen name glitterkatie2010. Aplin expressed his desire to have sex with "Katie" and arranged to meet her at a Starbucks inside a Super Target. Aplin drove to Super Target and looked inside the Starbucks. Aplin was then arrested and eventually found guilty of attempted sexual misconduct with a minor and child solicitation.

We affirmed Aplin's child solicitation conviction but reversed his attempted sexual misconduct with a minor conviction. In our analysis, we began by noting a difference between the offenses of sexual misconduct with a minor and child solicitation: the former requires that the victim be a child while the latter may be established if the defendant "believes" the victim to be a child. *Compare* Ind.Code § 35–42–4–9 [6] *with* Ind.Code § 35–42–4–6.[7]

6. Ind.Code § 35–42–4–9(a)(1) ("A person at least eighteen (18) years of age who, with a child at least fourteen (14) years of age but less than sixteen (16) years of age, performs or submits to sexual intercourse or deviate sexual conduct commits sexual misconduct with a minor, a Class C felony. However, the offense is ... a Class B felony if it is committed by a person at least twenty-one (21) years of age....").

We then concluded that attempted sexual misconduct with a minor also requires that the intended victim be a minor:

> The State charged that Aplin violated that statutory provision [sexual misconduct with a minor] when he attempted to engage in deviate sexual conduct with Dan Claasen.[8] If proven, this did not constitute the offense of attempted Sexual Misconduct with a Minor, because Detective Claasen is an adult. This conviction must be reversed due to insufficient evidence. As discussed below, the appropriate charge in these circumstances is that of Child Solicitation, whereby the State need not prove the actual age of the victim but may prove the solicitor's belief that the solicitee is a minor.

*Aplin,* 889 N.E.2d at 884–85 (footnote omitted).

■ Gibbs argues that *Aplin* requires reversal of his conviction for attempted sexual misconduct with a minor because the State alleged he attempted to have sexual intercourse with a person he believed to be fifteen years old but who was actually an adult. He further argues that the reasoning of *Aplin* applies to his con-

viction for attempted dissemination of matter harmful to minors because that statute also does not contemplate a victim believed to be a minor. *See* Ind.Code § 35–49–3–3. We first address Gibbs' conviction for attempted sexual misconduct with a minor.

The State concedes *Aplin* is on point but argues it was incorrectly decided. We, however, believe that *Aplin* was correctly decided. This is especially so since the Indiana Supreme Court denied transfer in *Aplin* on December 4, 2008. If our General Assembly wanted to penalize defendants for attempting to commit the offense of sexual misconduct with a minor when the victim is an adult the defendant believed to be fourteen or fifteen years old, it could have chosen statutory language similar to that it used in the child solicitation statute, that is, "an individual the person believes to be" a child at least fourteen but less than sixteen years old. *See* I.C. § 35–42–4–6. However, our General Assembly did not do so. Pursuant to *Aplin,* the evidence is insufficient to support Gibbs' conviction for attempted sexual misconduct with a minor.[9]

■ As for Gibbs' conviction for attempted dissemination of matter harmful

---

7. Ind.Code § 35–42–4–6(c) ("A person at least twenty-one (21) years of age who knowingly or intentionally solicits a child at least fourteen (14) years of age but less than sixteen (16) years of age, or an individual the person believes to be a child at least fourteen (14) years of age but less than sixteen (16) years of age, to engage in: (1) sexual intercourse; (2) deviate sexual conduct; or (3) any fondling or touching intended to arouse or satisfy the sexual desires of either the child or the older person; commits child solicitation, a Class D felony." However, the offense is a Class C felony if it is committed by using a computer network. . . . ).

8. We acknowledge that in *Aplin,* the charging information alleged that Aplin "attempted to engage in sexual conduct with a specified adult, not that Aplin attempted to engage in

sexual misconduct with a child but it was impossible to do so because of his misapprehension of the circumstances." *Aplin,* 889 N.E.2d at 884 n. 4. The *Aplin* Court then cited the statute that provides that impossibility is not a defense to a crime. *Id.* We find that the differences in the wording of the charging informations in *Aplin* and this case do not affect the outcome of this case because the intended victim here was, in fact, an adult.

9. In light of this holding, we do not need to address Gibbs' arguments that the State failed to present sufficient evidence to negate his defense of entrapment as to attempted sexual misconduct with a minor and that the evidence is insufficient to prove that he took a substantial step toward the crime of sexual misconduct with a minor.

to minors, Indiana Code § 35–49–3–3 provides:

> (a) Except as provided in subsection (b), a person who knowingly or intentionally:
>
> \* \* \* \* \* \*
>
> (4) engages in or conducts a performance before minors that is harmful to minors;
>
> \* \* \* \* \* \*
>
> commits a Class D felony.
>
> (b) This section does not apply if a person disseminates, displays, or makes available the matter described in subsection (a) through the Internet, computer electronic transfer, or a computer network unless:
>
> \* \* \* \* \* \*
>
> (3) *the person distributes the matter to a child less than eighteen (18) years of age believing or intending that the recipient is a child less than eighteen (18) years of age.*

I.C. § 35–49–3–3(a), (b) (emphasis added). If, like in this case, matter is disseminated via Internet or computer, subsection (b)(3) imposes two additional requirements: (1) the recipient must be less than eighteen years old *and* (2) the person must believe or intend the recipient to be less than eighteen years old. Because the actual recipients here, Detectives Odier and Anderson, were not less than eighteen years old, pursuant to the reasoning in *Aplin,* there was never an opportunity for the first requirement to be met. Once again, we note that our General Assembly did not use language in this statute similar to that it used in the child solicitation statute. The evidence is insufficient to support Gibbs' conviction for attempted

10. In light of this holding, we do not address Gibbs' argument that the evidence is insufficient to support his conviction for attempted

dissemination of matter harmful to minors.[10]

## II. Admission of Photographs

Gibbs contends that the trial court erred in admitting two photographs of him into evidence at trial. One shows him lying face down on the floor with his hands handcuffed behind his back and a condom and rope next to him. The other shows him with his hands handcuffed behind his back and police officers holding on to his arms.

█ A trial court has broad discretion in ruling on the admissibility of evidence, and we review its rulings for abuse of discretion. *Griffith v. State,* 788 N.E.2d 835, 839 (Ind.2003). An abuse of discretion occurs if the decision is against the logic and effect of the facts and circumstances before the trial court. *Myers v. State,* 718 N.E.2d 783, 789 (Ind.Ct.App. 1999). When a trial court abuses its discretion in admitting evidence, reversal is not required if the error was harmless. *Edmond v. State,* 790 N.E.2d 141, 144 (Ind.Ct.App.2003), *trans. denied.* Error is harmless "if the probable impact of the evidence upon the jury is sufficiently minor so as not to affect a party's substantial rights." *Id.* at 144–45 (quoting *Appleton v. State,* 740 N.E.2d 122, 124 (Ind.2001)).

█ Gibbs argues the photographs were unduly prejudicial. Indiana Evidence Rule 403 provides relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." The State argues the photographs were probative of Gibbs' identity and of the fact he brought condoms and rope with him.

dissemination of matter harmful to minors because his actions were not a "performance" within the meaning of the statute.

We conclude any error in the admission of the photographs was harmless because the evidence against Gibbs was overwhelming. There was no serious dispute as to Gibbs' identity. The State showed portions of the webcam video that showed Gibbs' face. The State had evidence linking Gibbs to the screen name rfg452005. Gibbs is missing his right index ringer, and rfg452005 said he was missing his right index finger and showed his right hand on his webcam. A car registered to Gibbs was found outside the apartment where he was arrested. The detectives identified Gibbs in court as the man they had seen on the webcam and the man who had arrived at the apartment. Furthermore, Gibbs' conversations with samantha_dyer61 and his webcam video were recorded and viewed by the jury, and their content provides a firm foundation for his convictions. Although the photographs showed Gibbs in a humiliating and suggestive situation, they likely had little impact on the verdict given the clear evidence of his guilt. Therefore, their admission was harmless and not grounds for reversal.

### III. Inappropriate Sentence

■■■ Finally, Gibbs argues his sentence is inappropriate. We first observe that we have reversed two of Gibbs' three convictions, leaving him with only one sentence for child solicitation. Nevertheless, we will address whether his remaining sentence of four years with two years suspended is inappropriate. We may revise a sentence if it is "inappropriate in light of the nature of the offense and the character of the offender." Ind. Appellate Rule 7(B). The defendant bears the burden of persuading us his sentence is inappropriate. *Reid v. State*, 876 N.E.2d 1114, 1116

(Ind.2007) (citing *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind.2006)).

As to the nature of the offense, Gibbs argues "Samantha" appeared older than fifteen because of her sexual experience and a reference in her profile to marijuana. He urges us to consider the environment of the internet, where it is not uncommon for people to role play, and "one is not confronted with the overt reality of face to face interactions and the usual social cues." Appellant's Br. p. 20. He also urges us to consider that he was caught as a result of "an aggressive sting operation." *Id.* at 19.

However, "Samantha" stated several times that she was fifteen, and the picture on her profile was of a teenage girl. Gibbs acknowledged a sexual relationship with Samantha would be illegal, but he stated he did not mind that Samantha was fifteen as long as she did not get him into trouble. Gibbs initiated contact with Samantha and suggested meeting to have sex. He followed up with two more conversations within nine days. Gibbs exposed himself via his webcam during two of the conversations and requested nude pictures. He appeared determined to expand the sexual experience of a young girl, explaining to her how to masturbate and pushing her to allow him to tie her up, although she said it sounded scary.

As to his character, Gibbs notes he has no criminal record. He served in the Navy, has been regularly employed, and has supported a family. He completed the Basic Seminar of the Institute in Basic Life Principles.[11] At the sentencing hearing, Gibbs stated he "made a bad judgment" and has "changed different ways in my life," which includes attending church and giving to charity. Tr. p. 534. His

11. The certificate Gibbs submitted as an exhibit states this is "A study in the application of the seven Biblical principles of life: De-

sign, Authority, Responsibility, Ownership, Suffering, Moral Purity, and Success." Ex. p. 116.

mother testified he helps her by taking her to the grocery store and doctor appointments and by buying her medications when she cannot afford them.

The trial court did not give great weight to Gibbs' remorse because it could not determine whether Gibbs was "sorry because you're really sorry over what you did or ... because you've been doing what you've wanted to do on the computer and you happen to get caught and now everyone knows?" *Id.* at 551. The trial court acknowledged Gibbs' lack of criminal history was a significant mitigating circumstance. For the child solicitation conviction, the trial court sentenced Gibbs to the advisory term of four years and suspended two years. We believe this sentence appropriately takes into account Gibbs' lack of criminal history and his demonstrated potential to engage in predatory behavior, and we therefore affirm it.

Affirmed in part, reversed in part.

MATHIAS, J., concurs.

MAY, J., dissents with separate opinion.

MAY, Judge, dissenting.

Because I believe Gibbs' convictions of attempted sexual misconduct with a minor and attempted dissemination of matter harmful to minors should be affirmed, I respectfully dissent in part. I agree with the State that *Aplin* was wrongly decided.[1] Although an actual child victim is required for a conviction of the completed offense of sexual misconduct with a minor, *Aplin* did not adequately explain why an actual child is an element of an attempt offense or cite any authority in support of that proposition.

The majority, agreeing with *Aplin,* views the difference between the sexual misconduct with a minor statute and the child solicitation statute as a policy decision by the General Assembly not to penalize a person for attempting to engage in sexual misconduct with someone who is not a minor. However, the attempt statute applies to all offenses except crimes of recklessness, *Anthony v. State,* 274 Ind. 206, 409 N.E.2d 632, 636 (1980), and that statute provides that impossibility is not a defense. Ind.Code § 35–41–5–1(b).[2]

1. The majority believes *Aplin* was correctly decided, "especially so since the Indiana Supreme Court denied transfer...." (Op. at 1244.) Denial of transfer has no precedential value or legal effect other than to terminate the litigation between the parties, and does not necessarily indicate the Supreme Court's agreement with this court's opinion. *Wishard Memorial Hosp. v. Kerr,* 846 N.E.2d 1083, 1088 n. 1 (Ind.Ct.App.2006). *See Ludy v. State,* 784 N.E.2d 459, 460 (Ind.2003), where our Supreme Court unanimously adopted a new rule of law one year after it had denied transfer in a case presenting precisely the same argument.

2. The majority does not acknowledge the abrogation of the impossibility defense in Ind. Code § 35–41–5–1(b). *Aplin* mentioned it in a footnote:

The State alleged that Aplin attempted to engage in sexual conduct with a specified adult, not that Aplin attempted to engage in

sexual misconduct with a child but that it was impossible to do so because of his misapprehension of the circumstances. It is no defense that, because of misapprehension of the circumstances, it would have been impossible for the accused to commit the crime attempted. Ind.Code § 35–41–5–1(b).

889 N.E.2d 882, 884 n. 4 (Ind.Ct.App.2008), *reh'g denied.* Thus, *Aplin* appears to acknowledge that impossibility is not a defense, but faults the State for the language of the charging instrument. However, any time a defendant fails to complete an offense because it is impossible, the State will be unable to allege facts that would ordinarily constitute an offense. "[T]he purpose of a charging instrument is to provide a defendant with notice of the crime of which he is charged so that he is able to prepare a defense." *Brown v. State,* 830 N.E.2d 956, 963 (Ind.Ct.App.2005). The *Aplin* panel did not suggest the wording used

It is clear that section (b) of our statute rejects the defense of impossibility. It is not necessary that there be a present ability to complete the crime, nor is it necessary that the crime be factually possible. *When the defendant has done all that he believes necessary to cause the particular result, regardless of what is actually possible under existing circumstances, he has committed an attempt.* The liability of the defendant turns on his purpose as manifested through his conduct. If the defendant's conduct, in light of all the relevant facts involved, constitutes a substantial step toward the commission of the crime and is done with the necessary specific intent, then the defendant has committed an attempt.

Previous Indiana cases have sometimes narrowly interpreted an attempt as conduct ' "which will apparently result in the crime, unless interrupted by circumstances independent of the doer's will.' " However, the new statute shows that this interpretation focusing on the result of the conduct is no longer applicable and that the law now focuses on the substantial step that the defendant has completed, not on what was left undone.

*Zickefoose v. State*, 270 Ind. 618, 388 N.E.2d 507, 510 (1979) (emphasis added and citations omitted).

Gibbs intended to have sex with a fifteen-year-old. He did all he believed was necessary to complete the offense of sexual misconduct of a minor, and he failed to complete the offense only because it was not possible under the circumstances.

Our court presumes the General Assembly is aware of existing rules of law when it enacts a statute. *Gallagher v. Marion County Victim Advocate Program, Inc.,*

401 N.E.2d 1362, 1365 (Ind.Ct.App.1980). In light of the law existing when the sexual misconduct with a minor statute was enacted, I conclude the General Assembly could not have intended to foreclose prosecution under the sexual misconduct with a minor statute when the defendant erroneously believes the victim is a minor. Instead, its intent was that the State would have to proceed under attempt law and prove a substantial step, whereas an outright conviction of child solicitation would be possible under the same circumstances. Therefore, I would not apply *Aplin* to reverse Gibbs' convictions of attempted sexual misconduct with a minor and attempted dissemination of matter harmful to minors.

Because I would not follow *Aplin,* I would address the remaining issues Gibbs raises: (1) whether there was sufficient evidence he took a substantial step towards committing attempted sexual misconduct with a minor; (2) whether he engaged in a "performance" in the meaning of the statute prohibiting dissemination of matter harmful to minors; and (3) whether he established a defense of entrapment.

### 1. *Substantial Step*

Gibbs argues arriving at the designated meeting place with condoms and rope was not a substantial step pursuant to *State v. Kemp,* 753 N.E.2d 47 (Ind.Ct.App.2001), *trans. denied. Kemp* also involved an online sting operation. A detective with the Indiana State Police used the screen name Brittney4u2 to pose as a fourteen-year-old girl. "Brittney" initiated an online conversation with Kemp, told him to "come on down," and suggested a meeting place. *Id.* at 51–52. Kemp agreed to meet Brittney in a restaurant parking lot near a motel. Kemp was arrested when he ar-

by the State failed to apprise Aplin of the charges against him.

rived at the parking lot. The police found a package of condoms in his vehicle.

The panel reversed Kemp's conviction of attempted child molesting. The panel stated the law of attempt as follows:

To attempt to commit a crime, a person must act with the culpability required for the commission of the crime and engage "in conduct that constitutes a substantial step toward the commission of the crime." Some actual overt step must be taken or an act in furtherance of committing the crime must be done. The overt act must reach far enough towards accomplishing the attempted crime as to amount to commencement of consummation of the crime. The overt act must go beyond preparation and planning.

*Id.* at 50 (citations omitted). The *Kemp* panel concluded that the substantial step alleged by the State—agreeing to meet Brittney, driving to the meeting place, and bringing condoms—was mere preparation and planning.

The State concedes *Kemp* is on point, but urges us to rule differently. I believe the *Kemp* holding is overbroad and I would decline to follow it.

A useful case for comparison is *Collier v. State,* 846 N.E.2d 340 (Ind.Ct.App.2006), *trans. denied* 860 N.E.2d 585 (Ind.2006). Collier's wife, Nancy, had separated from Collier, obtained a protective order, and filed for divorce. One day, while Nancy was working at a hospital, Collier went to his neighbor and said he was going to kill Nancy and then kill himself. Collier went home and a few hours later he again went to his neighbor and said he was going to kill Nancy and himself. The two drank some beer, and Collier dozed off. A few hours later, Collier asked his neighbor to take care of his pets and gave him spare keys. He grabbed an ice pick and a box cutter and said he would stab Nancy, cut

her throat, and ram her with his truck. Collier left in his truck, and the neighbor contacted the police. The police found Collier parked outside the door where Nancy would exit the hospital when she finished her shift. He was asleep or passed out in his truck.

The law on attempt has been stated as follows:

We have said that a "substantial step" for purposes of the attempt statute is any overt act beyond mere preparation and in furtherance of intent to commit an offense. Whether a defendant has taken a substantial step toward the commission of a crime is generally a question of fact to be decided by the trier of fact based on all the particular circumstances of the case. In making this determination, the focus is on what acts have been completed, not what remains to be done. The completed acts must be strongly corroborative of the firmness of the defendant's criminal intent. Stated differently, the liability of the defendant turns on his purpose as manifested through his conduct.

*Id.* at 344 (citations omitted).

The majority concluded Collier's conduct was not strongly corroborative of the firmness of his intent. It relied on the fact that Collier was asleep or unconscious and that the weapons he brought with him were not an immediate threat to Nancy, given that she was inside the hospital, while Collier was outside in his van.

The majority distinguished *Hampton v. State,* 468 N.E.2d 1077 (Ind.Ct.App.1984), in which this Court affirmed a conviction of attempted robbery. Hampton went to a Pizza Hut, put on a ski mask, and hid in some bushes while he waited for the assistant manager to leave with a large amount of cash. The *Hampton* court concluded these actions were a substantial step to-

ward commission of robbery. The *Collier* majority distinguished *Hampton* because Hampton was conscious, made a statement to the police that he intended to rob the Pizza Hut because he needed money, was armed with a gun, and actually exited his vehicle and approached the building.

Judge Barnes dissented in *Collier*, emphasizing that what constitutes a substantial step is a question for the jury. Judge Barnes believed Collier's actions corroborated his stated intent to kill Nancy. He argued the evidence of a substantial step was sufficient under *Hampton* and *Johnston v. State*, 541 N.E.2d 514 (Ind.1989), *reh'g denied.* Johnston was convicted of attempted child molesting. He told the intended victims' parents that he would give them money if they allowed him to have sex with the children and explained to them how he would use lubricants and a vibrator. Johnston then arrived at their house with a vibrator, lubricants, and sedatives. Our Supreme Court upheld the conviction, considering Johnston's conduct in light of his stated intent.

The *Kemp* decision does not acknowledge that what constitutes a substantial step is generally a question for the jury to determine based on all the circumstances of the case, nor does the decision take into account the defendant's stated intent. Instead, *Kemp* holds that arriving at a designated meeting place with items the defendant has planned to use to commit the offense is merely preparation and planning, and therefore is insufficient as a matter of law to constitute a substantial step.[3] However, that is essentially what the substantial steps in *Hampton* and *Johnston* were. In addition, the facts in Gibbs' case are more compelling than those in *Collier* because he entered the room where he expected his victim to be and he was actively attempting to complete the crime when he was arrested.

The *Kemp* court expressed concern that if arriving at the meeting place with condoms were sufficient to establish a substantial step, there would be no limit on the reach of attempt crimes. Frequently, the State will not have concrete evidence of the defendant's intent in arriving at a particular location. However, in Gibbs' recorded correspondence with the State, he outlined the offenses he intended to commit. A jury could reasonably conclude that arriving at the meeting place with items specifically mentioned in his prior conversations and with no legitimate use under the circumstances was strongly corroborative of criminal intent.[4] This is an

---

3. The *Kemp* panel relied on *State v. Duke*, 709 So.2d 580 (Fla.Dist.Ct.App.1998), which involved an online sting operation. Florida appears to be the only other jurisdiction that has held this sort of conduct is not a substantial step. *Cf. Kirwan v. State*, 351 Ark. 603, 96 S.W.3d 724 (2003); *People v. Reed*, 53 Cal. App.4th 389, 61 Cal.Rptr.2d 658 (1996), *review denied; State v. Sorabella*, 277 Conn. 155, 891 A.2d 897 (2006), *cert. denied*, 549 U.S. 821, 127 S.Ct. 131, 166 L.Ed.2d 36 (2006); *Dennard v. State*, 243 Ga.App. 868, 534 S.E.2d 182 (2000), *reconsideration denied, cert. denied; State v. Glass*, 139 Idaho 815, 87 P.3d 302 (Ct.App.2003), *review denied; People v. Scott*, 318 Ill.App.3d 46, 251 Ill.Dec. 630, 740 N.E.2d 1201 (2000), *appeal denied; State v. Young*, 139 S.W.3d 194 (Mo.Ct.App.2004),

*reh'g and/or trans. denied; Van Bell v. State*, 105 Nev. 352, 775 P.2d 1273 (1989), *reh'g denied; Chen v. State*, 42 S.W.3d 926 (Tex. Crim.App.2001); *State v. Townsend*, 147 Wash.2d 666, 57 P.3d 255 (2002); *State v. Grimm*, 258 Wis.2d 166, 653 N.W.2d 284 (Ct.App.2002).

4. As noted in *Collier*, our attempt statute is based on the Model Penal Code. 846 N.E.2d at 346. The Model Penal Code § 5.01(2) provides an illustrative list of conduct that, if strongly corroborative of the actor's criminal purpose, may establish a substantial step as a matter of law. One example is "possession of materials to be employed in the commission of the crime, that are specially designed for such unlawful use or that can serve no lawful

appropriate issue for a jury to determine in light of all the circumstances of the case.

## 2. *Performance*

I would also reject Gibbs' argument that he did not engage in a "performance" in the meaning of the dissemination of matter harmful to minors statute. *See* Ind.Code § 35–49–3–3(a)(4); *see also* Ind.Code § 35–49–1–7 (defining "performance"). Gibbs compares his case to *Riffel v. State,* 549 N.E.2d 1084 (Ind.Ct.App.1990), *trans. denied,* where we reversed a conviction of engaging in an obscene performance because the acts occurred in the privacy of Riffel's home. The rationale of *Riffel* is not applicable, because Gibbs believed the video was being viewed by a fifteen-year-old girl in her own home. Accordingly, I conclude Gibbs conducted a performance in the meaning of Ind.Code §§ 35–49–3–3(a)(4) and 35–49–1–7. *See also Fultz v. State,* 473 N.E.2d 624 (Ind.Ct.App.1985) (upholding conviction of engaging in an obscene performance where Fultz masturbated in front of a large window in a lighted room at night and therefore was visible to his neighbors), *reh'g denied, trans. denied.*

## 3. *Entrapment*

Finally, I would agree with the State that Gibbs did not establish an entrapment defense because the State proved predisposition beyond a reasonable doubt. *See* Ind.Code § 35–41–3–9. The following factors are important in determining whether a defendant was predisposed to commit the offense: (a) the character of the defendant; (b) whether the suggestion of criminal activity was originally made by the government; (c) whether the defendant was engaged in criminal activity for a profit; (d) whether the defendant evidenced reluctance to commit the offense; and (e)

purpose of the actor under the circum-

the nature of the inducement offered by the government. *Kats v. State,* 559 N.E.2d 348, 353 (Ind.Ct.App.1990), *trans. denied.* In the online conversations, Gibbs characterized himself as someone who "love[s] young pu* *y." (Exhibits at 9.) The suggestion of criminal activity came from Gibbs, who, during the first conversation, brought up meeting in person. Gibbs did not show reluctance, but rather was persistent in getting directions to Samantha's apartment. As to the nature of the inducement, the police played a primarily passive role, and for large portions of the conversations, they simply responded to Gibbs' questions. Gibbs contacted Samantha, steered the conversation toward sex, and exposed himself on his webcam with no prompting from the police. These facts are sufficient to prove Gibbs' predisposition beyond a reasonable doubt.

I would affirm the judgment of the trial court in full.

stances." Model Penal Code § 5.01(2)(e).