# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-08-00546-CR

**Maurilio Pena, Appellant**

**v.**

**The State of Texas, Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 403RD JUDICIAL DISTRICT
### NO. D-1-DC-07-302475, HONORABLE BRENDA KENNEDY, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury found appellant Maurilio Pena guilty of aggravated assault with a deadly weapon and assessed his punishment, enhanced by a previous felony conviction, at seventy-five years' imprisonment and a $10,000 fine. *See* Tex. Penal Code Ann. § 22.02 (West Supp. 2008). In two points of error, appellant contends that the evidence is legally insufficient to prove that he used or exhibited a deadly weapon and that the trial court erroneously admitted an out-of-court statement by the alleged victim in violation of his Sixth Amendment confrontation right. We hold that the evidence supports the jury's finding that appellant used a deadly weapon and that appellant forfeited his confrontation claim. Accordingly, we affirm the conviction.

## BACKGROUND

The assault took place at 1:00 a.m. on October 10, 2007, at the Whataburger restaurant on the corner of South First and Barton Springs in Austin. Jessica Cisneros testified that she was in the restaurant parking lot when she saw a Hispanic couple leave the restaurant. The man was pulling the woman, who appeared to be frightened, toward the parking lot. Cisneros said that she heard the woman say, "Why do you keep doing this to me," or words to that effect. Cisneros entered the restaurant and remained there for a few minutes. When she left the restaurant to return to her car, she saw the Hispanic couple she had noticed earlier. They were in a van, and the man was hitting the woman with his fists and choking her. Cisneros called 911 to report the assault. As she was calling, the woman managed to escape from the van and run inside the restaurant. The assailant drove away in the van. Cisneros gave the 911 operator the license plate number of the van.

Katy Tucker also witnessed the assault. Tucker testified that she and a friend were in the drive-through lane when they saw the Hispanic couple leave the restaurant. They appeared to be arguing. As Tucker watched, the man grabbed the woman and forced her into a van. Tucker could not see clearly what happened in the van, but she could see movement and noticed that the van began to shake. When Tucker heard the woman scream, she called 911. While Tucker was talking to the 911 operator, the woman got out of the van and ran inside the restaurant. Tucker, still on the phone with the operator, followed the woman inside. Tucker reported that the woman was bleeding and crying. Tucker spoke to the woman, whose voice can be heard in the background of the recorded 911 call, which was introduced in evidence and played for the jury. The woman told Tucker that her assailant had been armed with a knife and "was going to stab her on her, in her neck." The woman described her attacker as her boyfriend and said that he was "gonna kill me."

2

The victim of the assault was identified as Nereida Gonzalez, who gave the hospital a San Antonio address. Photographs and medical testimony show that Gonzalez had numerous injuries, including bruises on her throat, bite marks, and a puncture wound on her arm. Gonzalez did not respond to a summons and did not testify at appellant's trial. Neither Cisneros nor Tucker identified appellant at trial.

Using the license plate number supplied by Cisneros, the police learned that the suspect van had been rented in San Antonio on October 1, ten days before the assault, by a person named Socorro Navarro. The van was found abandoned in San Antonio two days after the assault. Austin police officers searched the van and found in it a man's wrist watch, a folding knife, a beer bottle, and appellant's birth certificate. The certificate shows that appellant was born in San Antonio on September 21, 1967. His mother was Socorro Pena, who was twenty-five years old at the time of the birth. The rental agreement for the van shows that Socorro Navarro was born on September 22, 1941; she would have been twenty-five on the day appellant was born.

Appellant's palm print was found on the outside of the right front passenger window of the van. Swabs from the interior left "B" pillar and the interior left rear door handle of the van contained a mixture of DNA of which appellant's DNA was the major component; Gonzalez was not a contributor. Appellant's DNA was also found on the lip of the beer bottle and on the band of the wrist watch. A blood stain on the blade of the folding knife contained appellant's DNA, but not Gonzalez's. A mixture of appellant's and Gonzalez's DNA was found on the handle of the knife. Finally, a swab of the bite mark on Gonzalez's left arm contained a mixture of appellant's and Gonzalez's DNA. For this sample, the probability of an unrelated, random person matching this DNA profile was one in 821,000 for Hispanics.

3

**DEADLY WEAPON**

In multiple paragraphs, the indictment alleged that appellant caused bodily injury to Gonzalez by striking her with his hand, stabbing her with a knife, grabbing her with his hand, biting her with his mouth, and kicking her with his foot. Each paragraph alleged that the assault was aggravated by the use and exhibition of a knife, which was a deadly weapon in the manner of its use or intended use. The jury returned a general verdict of guilty. In his second issue, appellant contends that the evidence was legally insufficient to support the jury's verdict with respect to the aggravating element.

When there is a challenge to the sufficiency of the evidence to sustain a criminal conviction, the question presented is whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 324 (1979); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). In a legal sufficiency review, all the evidence is reviewed in the light most favorable to the verdict; it is assumed that the trier of fact resolved conflicts in the testimony, weighed the evidence, and drew reasonable inferences in a manner that supports the verdict. *Clayton*, 234 S.W.3d at 778.

Appellant does not dispute that he was shown to have physically assaulted Gonzalez as alleged. Appellant also concedes that the evidence is legally sufficient to prove that he threatened to kill Gonzalez with a knife, and that the knife found in the van, State's exhibit 59, was capable of causing death or serious bodily injury. *See* Tex. Penal Code Ann. § 1.07(a)(17)(B) (West Supp. 2008). Appellant contends, however, that the State failed to prove that he used or exhibited exhibit 59 or any other knife during the assault. In support of this contention, appellant notes that

4

neither witness to the assault testified that she saw a knife, that the blood found on the blade of exhibit 59 did not contain Gonzalez's DNA, and that a police officer testified that the stab wound on Gonzalez's arm could have been made by an object other than a knife, including a screwdriver, ice pick, or pencil.

In addition to the evidence showing the severity of appellant's attack on Gonzalez, the jury heard testimony that Gonzalez told Tucker that her attacker tried to stab her in the neck with a knife. In fact, the jury heard Gonzalez say this on the 911 recording. Although Gonzalez was not cut on the throat, there was testimony that the puncture wound on her arm could have been made by a knife, including the knife found in the van two days after the assault. The fact that Gonzalez's blood was not found on the blade of this knife does not mean that it was not the weapon appellant used to stab her, particularly in light of the evidence showing that Gonzalez's DNA was on the handle of the knife. We hold that the evidence as a whole, viewed in the light most favorable to the jury's verdict, is sufficient to support a finding beyond a reasonable doubt that appellant, during the assault, used or exhibited a knife—either exhibit 59 or another knife—that, in the manner of its use or intended use, was capable of causing death or serious bodily injury. *See McCain v. State*, 22 S.W.3d 497, 503 (Tex. Crim. App. 2000). Issue two is overruled.

## CONFRONTATION

One of the witnesses at appellant's trial was Sean Holohan, a paramedic who treated Gonzalez at the Whataburger on October 10.[1] Holohan identified two pages of Gonzalez's hospital

---

[1] Appellant's brief refers to the witness as "Holohan," while the State's brief refers to him as "Holoman." The reporter's record uses both names. Having examined the witness's signature as it appears in the exhibit, we conclude that the witness's correct name is Holohan.

records, introduced as State's exhibit 111, as the "patient care report" he prepared on the night in question. Included in this report was a handwritten, one-paragraph narrative. Over appellant's objection that his Sixth Amendment confrontation right was being violated, Holohan was permitted to read or summarize this narrative portion of his written report as follows:

A. "Patient is a 24-year-old female; presented sitting in the manager's office at the Whataburger with APD attending. Patient is crying and upset. She has torn clothing with blood on them. She is CNO times three." Do I need to explain that?

Q. What is CNO times three?

A. Conscious and oriented times three as far as person, place, and time.

Q. When you say conscious and oriented times three in terms of person, place, and time, is that—are you able to determine that based on questions you asked?

A. Yeah. Yes, that's correct.

. . .

Q. Okay. Continue.

A. After that I wrote something about her being in an abusive marriage. There's some of this that is blanked out, so.

Q. Just read what you are able to from that sheet.

A. Okay. Patient has bought [sic] from Austin—to Austin from San Antonio tonight. They stopped at the Whataburger. Patient attempted to get help from customers. The boyfriend took her outside.

Sorry, I'm having trouble reading this last part due to this copy.

Took her back to the car, apparently had hit her. She had multiple injuries, several being old and possibly new injuries from tonight. She has a hematoma to her forehead. I wrote to see this assessment.

After talking to the patient, she agreed to transport; possibly is pregnant but she's not sure.

6

I wrote negative LOC, which is loss of consciousness.

Q. So she did not lose consciousness?

A. Did not lose consciousness.

*Patient was also threatened with a knife that he would kill her and that she would end up in a ditch and no one would ever find her.* That was stated to me by her.

(Emphasis added.)

In his first issue, appellant contends that Gonzalez's statements to Holohan as recounted in Holohan's narrative report and testimony, and in particular the emphasized sentence, were testimonial hearsay and inadmissible under the Confrontation Clause as interpreted in *Crawford v. Washington*, 541 U.S. 36 (2004). In *Crawford*, the Court held that the Sixth Amendment confrontation right applies not only to in-court testimony, but also to out-of-court statements that are testimonial in nature. *Id*. at 51. The Confrontation Clause forbids the admission of testimonial hearsay unless the declarant is unavailable to testify and the defendant had a prior opportunity to cross-examine the declarant. *Id*. at 68. Whether a particular out-of-court statement is testimonial is a question of law. *De La Paz v. State*, 273 S.W.3d 671, 680 (Tex. Crim. App. 2008). It was the State's burden, as the proponent of the challenged evidence, to establish its admissibility. *Id*.

A trial court's ruling admitting or excluding evidence is reviewed for an abuse of discretion. *See State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006). This means that the ruling will be upheld if it is reasonably supported by the record and is correct under any applicable legal theory. *Id*. The trial court is the sole trier of fact and judge of the credibility of the witnesses

7

and the weight to be given their testimony. *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We give the trial court almost complete deference in determining historical facts, but we review de novo the trial court's application of the law to those facts. *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000); *see also Wall v. State*, 184 S.W.3d 730, 742-43 (Tex. Crim. App. 2006) (applying hybrid standard of review to *Crawford* issue); *Mason v. State*, 225 S.W.3d 902, 907 (Tex. App.—Dallas 2007, pet. ref'd) (same). If the trial court does not make findings of fact, we review the evidence in the light most favorable to the court's ruling and assume the court made findings that are supported by the record and buttress its conclusion. *Carmouche*, 10 S.W.3d at 327-28.

In *Crawford*, the Court set out several formulations seeking to define "testimonial," but it did not endorse any of them. 541 U.S. at 51-52. Instead, "leav[ing] for another day any effort to spell out a comprehensive definition of 'testimonial,'" the Court stated that the term "applies *at a minimum* to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." *Id*. at 68 (emphasis added). Two years later, the Court clarified the distinction between testimonial and nontestimonial statements in the context of police interrogations:

> Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

*Davis v. Washington*, 547 U.S. 813, 822 (2006).

8

The State, citing the references to police interrogations in *Crawford* and *Davis*, argues that Gonzalez's statements to Holohan were not testimonial because they were not the product of police interrogation. But in *Davis*, the Supreme Court cautioned that "[o]ur holding refers to interrogations because . . . the statements in the cases presently before us are the products of interrogations . . . . This is not to imply, however, that statements made in the absence of any interrogation are necessarily nontestimonial." *Id.* at 822 n.1. The Court added that under the circumstances, it was "unnecessary to consider whether and when statements made to someone other than law enforcement personnel are 'testimonial.'" *Id.* at 823 n.2. Neither *Crawford* nor *Davis* hold that statements made to, or in response to questions by, a person other than a law enforcement officer are, for that reason alone, nontestimonial.[2]

The Texas Court of Criminal Appeals has recognized that statements made to persons who are not law enforcement officials may be testimonial, depending on the circumstances under which they were made. *See De La Paz*, 273 S.W.3d at 681 (holding that State failed to carry burden of establishing that statements to hospital nurse and social worker were not testimonial). So have at least two other Texas courts of appeals. *See Lollis v. State*, 323 S.W.3d 803, 810 (Tex. App.—Texarkana 2007, pet. ref'd) (holding, after considering totality of circumstances, that

---

[2] The State refers us to several opinions in which statements made to emergency medical personnel were held to be nontestimonial. *See Hudson v. State*, 179 S.W.3d 731, 737-38 (Tex. App.—Houston [14th Dist.] 2005, no pet.); *People v. Osorio*, 81 Cal. Rptr. 167, 175 (Cal. Ct. App. 2008); *State v. Kirby*, 908 A.2d 506, 527 (Conn. 2006); *Thomas v. State*, 668 S.E.2d 711, 714-15 (Ga. 2008); *Hester v. State*, 659 S.E.2d 600, 604-05 (Ga. 2008); *Wallace v. State*, 836 N.E.2d 985, 996 (Ind. Ct. App. 2005); *State v. Davis*, 2005 Ohio 6224, at ¶13 (Ohio Ct. App. 2005); *State v. Warlick*, 2007 Tenn. Crim. App. LEXIS 394, at *13-14 (Tenn. Crim. App. 2007); *State v. Washington*, 132 P.3d 743, 749 (Wash. Ct. App. 2006). None of these opinions, however, hold that statements to medical personnel are categorically nontestimonial.

statements to professional counselor were not testimonial); *Rangel v. State*, 199 S.W.3d 523, 535 (Tex. App.—Fort Worth 2006), *pet. dism'd, improvidently granted*, 250 S.W.3d 96, 98 (Tex. Crim. App. 2008) (holding that statements to child advocacy center interviewer were testimonial). *See also People v. Stechly*, 870 N.E.2d 333, 364 (Ill. 2007) (holding that statements to school nurse and social worker were testimonial; rejecting argument that only statements to law enforcement personnel are testimonial); *State v. Bentley*, 739 N.W.2d 296, 301 (Iowa 2007) (holding that statements to counselor at child-protection center were testimonial); *State v. Justus*, 205 S.W.3d 872, 880-81 (Mo. 2006) (holding that statements to social workers were testimonial); *State v. Blue*, 717 N.W.2d 558, 564-65 (N.D. 2006) (holding that statements to forensic interviewer were testimonial); *State v. Henderson*, 160 P.3d 776, 792 (Kan. 2007) (same).

We need not decide whether the record before us is sufficient to support a finding that Gonzalez's hearsay statements to Holohan were nontestimonial. Instead, we conclude that the record supports a finding that, as the State asserted below and continues to assert in its brief, appellant forfeited his right to confront Gonzalez by his own wrongful act.

Under the "forfeiture by wrongdoing" doctrine, a defendant forfeits the right to confront a witness against him if he engages in wrongful conduct designed to prevent the witness from testifying. *Giles v. California*, ___ U.S. ___, ___, 171 L.Ed.2d 488, 495-96 (2008); *see Crawford*, 541 U.S. at 62; *Gonzalez v. State*, 195 S.W.3d 114, 125-26 (Tex. Crim. App. 2006). It is not sufficient that the defendant's conduct caused the witness to be absent; it must be shown that the defendant intended to prevent the witness from testifying. *Giles*, 171 L.Ed.2d at 497; *Davis v. State*, 268 S.W.3d 683, 706 (Tex. App.—Fort Worth 2008, pet. ref'd). The court of criminal appeals has held that the doctrine applies "even though the act with which the accused is charged is

10

the same as the one by which he allegedly rendered the witness unavailable." *Gonzalez*, 195 S.W.3d at 125; *see also Giles*, 171 L.Ed.2d at 504 n.6.

In urging the admission of the challenged testimony, the prosecutor told the trial court:

> There is an additional argument the State could proffer at this time, which under the forfeiture doctrine, under the Gonzales [sic] case and cases that come from Dallas County, that based on the conduct of Mr. Pena prior—immediately prior to this incident with his threat to Ms. Gonzalez which was in terms of quoting, I'll . . . kill you and throw you in a ditch, that he has forfeited his right to confrontation based on that statement.

> In addition, the State has heard and has provided to defense counsel a jail call made between Mr. Pena and Ms. Gonzalez where Mr. Pena is heard on the jail call—Ms. Gonzalez said, well, are you going to call CPS on me, referring to her children; Mr. Pena's response was, well, I don't want to, but. This was in the context of her recanting her statements.

> So . . . the defendant has forfeited his right under the confrontation clause.

Although the State did not offer the recorded telephone call in evidence and it does not appear in the record, defense counsel did not dispute the prosecutor's statements regarding the existence of the recording, the circumstances under which the recorded call was made, or the content of appellant's statements to Gonzalez during that conversation. We may assume, therefore, that the prosecutor's statements were accurate. *See Hayden v. State*, 66 S.W.3d 269, 273 (Tex. Crim. App. 2001) (assuming that witness statements that did not appear in record were as prosecutor represented them to be); *Pitts v. State*, 916 S.W.2d 507, 510 (Tex. Crim. App. 1996) (stating that court of criminal appeals accepts as true factual assertions made by counsel that are not disputed by opposing counsel).

Appellant's threat to kill Gonzalez and throw her body in a ditch does not support the application of the forfeiture rule because there was no showing that appellant made the threat with the specific intent to prevent Gonzalez from testifying. That is not the case with respect to the telephone call, however. The clear import of appellant's remarks to Gonzalez during the telephone call, as recounted by the prosecutor, was a threat to report her to child protective services if she did not recant her accusations.[3] Viewing the record in the light most favorable to the trial court's ruling, the trial court could reasonably infer that this threat was also intended to, and did, prevent Gonzalez from testifying at appellant's trial.

We hold that the State established the admissibility of the challenged hearsay statements under the "forfeiture by wrongdoing" exception to the Confrontation Clause. The trial court did not abuse its discretion by admitting the statements. Issue one is overruled.

The judgment of conviction is affirmed.

_____

Jan P. Patterson, Justice

Before Justices Patterson, Pemberton and Waldrop

Affirmed

Filed:   September 9, 2009

Do Not Publish

---

[3] There is evidence that Gonzalez was an abuser of cocaine.

12